## STAPLER et al. vs. HURT'S EXECUTORS.

1. A court of equity acts *in personam*, and, when it has jurisdiction of the person, will afford relief against fraud, notwithstanding the property, in reference to which the fraud has been committed, is without the jurisdiction. In such cases, the relief will be adapted to its equity and justice, and if the fraudulent grantee refuses to return the property, he may be charged with its value.

2. When a reference is ordered to ascertain the amount of money due the complainant, or the value of property with which the defendant is charged by the decree, no execution should issue, until the report of the register comes in and is confirmed.

3. A creditor's bill, praying a writ of *ne exeat*, having been filed against S., as the fraudulent grantee of property, which he has removed from the State, he was arrested, and gave bond with security, conditioned to abide by and perform the final decree: *Held*—That it is error in the chancellor to order execution to issue against the securities for the value of the property, before they have had an opportunity to contest their liability on the bond.

Error to the Chancery Court of Russell. Before the Hon. W. W. Mason, chancellor.

The bill in this case was filed by the testator of the defendants in error, and alleges that he recovered a judgment at the fall term 1841 of the Circuit Court of Russell against William D. Hargrove, one of the plaintiffs in error, on which execution had issued, and been returned no property; that Har-

grove, about the time the judgment was rendered, conveyed certain slaves, viz. March, William, Monday, Robin, George, and Gilbert, to William L. Stapler, without consideration and for the purpose of defrauding his creditors; that these slaves are still the property of Hargrove, who has enjoyed the profits arising from their labor and had some of them in his service ever since said fraudulent transfer, but that Stapler has removed them from this State to parts unknown, so that they cannot be reached by execution at law; and that Stapler himself is about to remove, and if he is permitted to do so, the debt of the complainant will be lost. The prayer of the bill is for a *ne exeat* against Stapler; that the conveyances from Hargrove to Stapler be set aside and delivered up to be cancelled; that Stapler be compelled to produce the slaves, or such of them as he has not sold, and be decreed to account for the value of those sold and the hire of those still in his possession. The bill having been verified by the complainant, a writ of *ne exeat* was granted, under which Stapler was arrested by the sheriff and gave bond, with security, conditioned to abide by and perform the final decree. Stapler and Hargrove both answered the bill, denying the allegations of fraud, but admitting the conveyance of the slaves by Hargrove to Stapler, and insisting that it was *bona fide* and on valuable consideration. Stapler states in his answer that he purchased the slaves to secure himself as a creditor of and as a security for Hargrove; that he is a resident of the State of Georgia, and has no intention of removing, and that all the slaves, except George whom he has sold, are in his possession in the State of Georgia.

Thomas P. Parke testified—that the slaves were in the possession of Hargrove in 1841, and in September of that year, March, Monday, Robin and George went into the possession of Stapler, and Gilbert and William into the possession of the witness, to secure them against liability on a bond for something over two thousand dollars, which they had executed for the benefit of Hargrove, and which bond was afterwards arranged by Hargrove and cancelled; that the slaves were all young and likely, one fourteen, another eighteen, and the others twenty-five years of age; that having a claim of $200 against Hargrove for money paid for him in removing an in-

cumbrance on said slaves, he proposed to Stapler to take possession of said slaves and pay him his demand, which he did; that Hargrove lived in Columbus, Ga. from some time in the year 1844 until the close of the year 1846, and Stapler resided in the house with him; that some two months after Hargrove removed back to Alabama, one of the slaves left Stapler's possession in Columbus and went to the residence of Hargrove; that Stapler followed him and wished to take him back, but Mrs. Hargrove objected and complained that Stapler had not before that time delivered up the slaves, when Stapler stated that he was ready at any time for a settlement with Hargrove and would relinquish the claim upon the negroes so soon as he had received what money he had paid out for him; and that a day for a settlement was then agreed upon, at which the witness was to be present, but at the appointed time Stapler did not attend. Attached to the deposition of this witness are two letters written to him by Stapler, in reference to the slaves March, Monday, Robin and George, one dated the 1st, the other the 4th Sept. 1841, the witness then being an inmate of Hargrove's house in Alabama. In the first, Stapler says— " I have a young man that I have all confidence in, &c., that will meet you at any point, say to-morrow night, at Fort Mitchell," &c. &c. " Silence is wisdom." In the second, he says, " On reflection I have thought you had as well cross the river at some point nearer town, as it will be as safe, for it will be at night, when not many is stirring, say, cross the Uchee at the first place below, after you leave, and come in by Mrs. Redd's and cross the river at McDougald's plantation. Mr. Kelly will know where to cross. If you think it will be better to cross at Fort Mitchell, proceed on there. You had better start the negroes from the house before it is night, and let them come a mile or two and wait until dark—tell them where they are coming, for fear they may not want to come." In a postscript to this letter, he adds, " When Hargrove comes home he must either come and see me or send them papers. I want those that come over here in one separate bill of sale, &c., and those that are over here in two dates—one in 1837, Oct. 6th, and the other in 1838, in March,—put them down at fair prices at that time, and don't put any children in them, and let him write them for fear they may detect it, and sign his

own name, and make them strong, and be particular about their ages at that time," &c.

Seaborn Jones testified—that he held three notes made by Hargrove with Stapler as security—one for $500, dated 7th Sept. 1841, and two for $1000 each, one of them dated sometime in 1839 or 1840, and the other dated the 11th June 1841, and that Stapler paid the $500 note seven or eight years ago, and on the $1000 note made in 1839 or 1840, he paid $400 in January 1844, $500 in March 1848, and $310 in February 1849, and on the other $1000 note paid $225 or $250 in the summer of 1848.

This is all the material evidence in the record.

The chancellor being of the opinion that the fraud was made out by the proof, decreed that Stapler deliver up the slaves in his possession, within thirty days, to the register, who was ordered to sell them and pay the proceeds to the complainants, and if they should not sell for enough to pay the debt, the register was directed to take an account of the value of George, the slave stated in the answer of Stapler to have been sold, and of the annual value of the services of the slaves that have continued in Stapler's possession, and these amounts being ascertained, to issue execution against Stapler and the securities on his bond for so much thereof as should be requisite to satisfy the judgment, unless paid by the defendants in ten days thereafter. The register was further directed, that if Stapler should fail to deliver the slaves in his possession to the register, within thirty days after the rendition of the decree, to issue execution against him and his securities on the bond for the amount of the judgment and costs.

BELSER and RICE, for the plaintiffs in error:

1. The defendant, as shown by the pleadings, did not live in this State; he was not about to remove out of it. The property sought to be condemned was out of the State of Alabama, in the State of Georgia, and the residence of Stapler was at Columbus in the State of Georgia.—Lucas v. Hickman, 2 Stew. 111; Mallocks v. Trenam, 3 Johns. Ch. 75; Story's Com. on Eq. 691. The chancellor should on the bill and answer have refused to decree against the securities on the ne exeat bond. The answer of Stapler denies the allegations of

the bill on which the *ne exeat* was based and granted, and the complainant *has taken no proof to sustain those allegations. This ousted the court of chancery of jurisdiction before decree, and it never returned to it afterwards, if it ever had any.*

2. Upon the bill, answer and proofs, the decree should have been adverse to complainant. The complainant's evidence is not sufficient to overthrow defendant's answer and proof; and when this is the case, the defendant must prevail.

3. The chancellor's instructions to the register were premature, and several of them are founded in error, particularly as to Abercrombie et als., Stapler's sureties on the *ne exeat* bond.

4. The testimony of the witness Park, if he is not incompetent, is not of that clear character as to make him a creditable witness, and the main part of his testimony derives no aid from Kelly's evidence.

5. There should have been no estimate of the hire of the negroes before the bill was filed, and particularly of the boy George, whom Stapler had parted with.

6. The orders to issue the execution, given to the register, are erroneous. They are premature, and not maintainable according to practice.

7. *There is no equity in the bill, as a proceeding for a ne exeat. It is never allowed, merely against a fraudulent grantee, and he residing out of the State, and on a demand against another. The complainant has no debt or ascertained demand against Stapler. His demand is against Hargrove.*

8. There is no positive threat shewn in the bill that Stapler was about to remove. Merely averring information to such effect is not sufficient. *It should be distinctly stated on information and belief, that the fact is so.*—3 Johns. Ch. 412, § 75.

9. The cases cited by Judge Heydenfeldt are not like this. They are bills filed not against third persons, who are fraudulent grantees, and who owed the complainant no debt.— Massie v. Watts, 6 Cranch, 157 to 160.

HEYDENFELDT, for defendant.

DARGAN, C. J.—The plaintiffs in error contend that the bill is without equity, that the evidence is insufficient to warrant the decree, and that the directions to the register are erroneous.

Stapler et al. v. Hurt's Ex'rs.

We think the equity of the bill cannot be questioned. It charges a fraudulent transfer of the slaves by Hargrove to Stapler, who, it is alleged, has removed them from the State, so that they cannot be subjected to the payment of the judgment by execution at law. It is unnecessary to quote authorities to show that a court of equity, when it has jurisdiction over the persons, will never permit a fraud to defeat a creditor, when the fraud is once established, however cunningly it may be devised; but if we were to hold that the bill is without equity, merely because the properly is beyond the jurisdiction of the court, we should not only establish an exception to a most salutary rule, but would be declaring to fraudulent debtors that if they can procure some one to remove their property beyond the jurisdiction of the courts, they may enjoy the profits arising from it, and no relief can be afforded against them and their confederates, notwithstanding they may be subject to our jurisdiction. To establish such a rule as this would be to give fraud *the mastery of the law*. A court of equity acts *in personam*, and when it has jurisdiction over the person, will afford relief against fraud, without regard to the fact whether the property, in reference to which the fraud has been committed, be within the jurisdiction or not.—Briggs v. French, 1 Sumn. 540. The relief, too, will be adapted to the equity and justice of the case, and if the fraudulent grantee will not return the property, so that it may be appropriated to the payment of the debt, he may well be charged with the value of it.

We do not think it necessary to examine in detail the evidence. We are, however, satisfied that the evidence afforded by the depositions of the witnesses, in connection with the letters written by Stapler, and which are attached to the deposition of the witness Park, is sufficient, notwithstanding the denials of the answer, to establish the allegations of the bill, and that the complainant is entitled to the relief sought.

Whether the case was a proper one for a writ of *ne exeat*, or whether the affidavit was sufficient to authorise its issuance, are questions we have nothing in the present condition of the case to do with. The equity of the bill can in no case be made to depend upon the process that may be necessary to bring the parties before the court, or to compel them to perform the final decree that may be rendered in the cause. We shall there-

fore decline to examine the questions made in argument to show that this writ could not properly issue in this case, as well as the question of the liability of the securities given by Stapler to obtain his discharge from the custody of the sheriff. These questions can arise only, if ever, when the securities are brought before the court in a proper manner, and move there to obtain relief from their bond.

The chancellor, however, erred in the decree rendered. He instructs the register to take an account of the value of the services of the slaves and the value of George, the slave alleged to have been sold by Stapler; also, if Stapler fails to deliver the slaves admitted to be in his possession, within thirty days from the rendition of the decree, the register is directed to issue execution for the whole amount of complainant's judgment against him and the securities on his bond. When a reference is ordered to ascertain the amount of money that is due to the complainant, or the value of any property with which the defendant is charged by the decree, until the report of the register comes in and is confirmed, no execution should issue. The defendants here have the right not only to controvert the amount actually due on the judgment, but also the amount of the hire of the slaves, as well as their value; and they have the right to except to the report of the register, and to claim the judgment of the court upon their exceptions. All this is denied them by the directions to the register; and what is a still more glaring error, the execution is ordered to issue against the securities of Stapler on his bond, before they have had an opportunity to contest their liability on it. For these reasons the decree must be reversed, and we must proceed to render the decree that should have been rendered in the court below.

It is therefore ordered, adjudged and decreed, that the slaves mentioned in the pleadings, and admitted in the answer of Stapler to be in his possession and under his control, be condemned to the satisfaction of complainant's judgment against William D. Hargrove; and it is refered to the register of said chancery court to take an account and ascertain how much is due thereon for principal and interest. He will also take an account of the value of the slave George, alleged to have been sold by the defendant Stapler, as well as the value of the other

slaves condemned in satisfaction of complainant's demand.—He will further take an account of the value of the hire of said slaves, which have not been sold, from the time that said Stapler obtained possession of them up to the time of taking the account, and he will make report of all the matters here refered to him to the next term of said chancery court.

It is further ordered and decreed, that the defendants in error pay the costs of this court, and this case is remanded that further proceedings may be had in accordance with the above decree.