# Kitchell, Adm'r, v. Jackson.

*Bill in Equity to set aside Deed to Lands as Fraudulent and Void.*

1. *Conveyance of lands void for actual fraud; grantee chargeable with rents.*—In cases of actual fraud a fraudulent grantee must be considered

[Kitchell, adm'r, v. Jackson.]

as a trustee of the rents and profits, as well as of the *corpus*, of the property conveyed, and as holding them in the right, and for the benefit of attacking creditors; and hence, where a conveyance of land has been declared void for actual fraud, on bill filed by creditors of the grantor, the grantee is chargeable with rents. (*Marshall v. Croom*, 60 Ala. 121, overruled on this point.)

2. *Same; from what time rents to be estimated.*—But the rents or profits in such case should only be allowed from the service of the summons on the grantee, as that, strictly speaking, is the true time of the demand on him therefor.

3. *Costs in chancery; taxing of, discretionary.*—In equity the taxing of costs is a matter within the wise and just discretion of the chancellor, and is not revisable in this court.

APPEAL from Marengo Chancery Court.

Heard before Hon. THOMAS COBBS.

This cause was before this court at the December Term, 1879, and is reported under the title of *Thames & Co. v. Rembert's Adm'r.* See 63 Ala. 561. The proceedings were commenced on 16th May, 1872, by bill filed by Frank N. Kitchell, as the administrator *de bonis non* of the estate of James M. Rembert, deceased, a judgment creditor of D. Brooks Jackson, against said Jackson and Lucius Kelly, to have set aside, as fraudulent and void, a deed executed by Jackson on 8th March, 1869, conveying to Kelly real and personal property. On 10th February, 1874, Mrs. P. G. Jackson, the wife of D. Brooks Jackson, the Planters and Merchants' Insurance Co., a corporation, and C. E. Thames & Co. were, by amendment, made parties defendant to the bill, as claiming some interest in the property conveyed by the deed sought to be set aside. Shortly after the execution of the deed to Kelly, he conveyed a portion of the land, thereby conveyed to him, to Mrs. Jackson. This land is known in the proceedings as the "Home place," and the remainder of the lands conveyed to Kelly, as the "Kelly place." Prior to the filing of the bill, Kelly mortgaged the "Kelly place," and Jackson and wife mortgaged the "Home place," to C. E. Thames & Co.; and these mortgages were transferred and assigned to the Planters & Merchants' Ins. Co. by C. E. Thames & Co. D. B. Jackson was liable on the debts secured by both of these mortgages. On former appeal, this court decided, in substance, that the deed to Kelly was fraudulent in fact; that Thames & Co. were entitled to protection, as to the "Kelly place," as *bona fide* purchasers to the extent of their mortgage debt; but that the mortgage by Jackson and wife was void, the deed from Kelly to Mrs. Jackson having created in her a statutory separate estate; and, therefore, that the "Home place" should be condemned to sale for the payment of complainant's demand. The insurance company obtained possession of both places on 1st January, 1874, under said mortgages; and it received as rent of the "Home place" from 1874 to 1880, both inclusive, "less

[Kitchell, adm'r, v. Jackson.]

taxes, improvements and expenses allowed it, and including interest to April 1st, 1882," the date of the reference before the register, $948.15. From 1st January, 1881, the complainant received the rents of said place.

After the cause was remanded, a decree was entered, settling the equities of the respective parties in accordance with the opinion of this court on the former appeal, so far as they were then passed on ; and decreeing further, that the insurance company was entitled to the $948.15, rents collected from the "Home place" above mentioned. The Chancery Court also decreed two-thirds of the costs of this suit, "including the costs determined by the Supreme Court," against the complainant, and the balance against the insurance company. It was shown before the register, and by him reported to the court in pursuance of the decree of reference, that the value of the "Kelly place" was $2,500, and that the value of the "Home place" was $750.

The decree of the Chancery Court touching the rents of the "Home place" and the costs, is here assigned as error.

W. A. GUNTER, for appellant.—(1) The rents of the "Home place" should have been decreed to the complainant. Rents appertain and belong to the *corpus*, and it is all a trust property, in the hands of the fraudulent grantee; and his assigns with notice, for the impeaching creditors. The defendants lose nothing by being made to account ; and fraud would be encouraged, if they were allowed to retain the rents in such cases. It is certainly no argument against this claim in a court of equity, that at law the complainant could not have recovered the rents. When the creditor moves against the grantee in a court of equity, a court for the administration of trusts, and furnished with all the appliances for taking accounts, and the boast of which is, that it is its duty and pleasure to do complete equity, and to extinguish every spark of litigation, it is impossible to figure it out that the creditor is not entitled to the *rents and profits* received by a fraudulent grantee, and his assignee with notice, *pending the litigation.* Until the election to impeach the transaction is made by the creditor, and notice of it brought home to the grantee, there might be equity in saying that a grantee, holding for himself, and especially in cases of voluntary transfers of property, when there has been no actual intent, perhaps, of either party to defraud creditors, should not be called to account for rents and profits; but it would be a direct premium and reward to fraud, to hold that, after the election by the creditor to vacate the deed has been made, and the grantee has thus been, as held by all the authorities, turned into a trustee *in invitum*, the fraudulent grantee is entitled to the rents and profits

[Kitchell, adm'r, v. Jackson.]

pending a litigation of ten or twenty years, resulting, in the first instance, from his original fraud, and, perhaps, prolonged at his suggestion. The true rule is that of the civil law, which has long been also that of the common law, that no one should be allowed to profit by his own wrong, and that a fraudulent grantee is liable for rents and profits. The following authorities are cited and discussed on this point: Bump on Fraud. Con. (2nd Ed.) pp. 591-3; *Stapler v. Hurt*, 16 Ala. 799; *Pharis v. Leachman*, 20 Ala. 663; *Backhouse v. Jett*, 1 Brock. 500; 1 Bland's Ch. Rep. p. 57; *Kipp v. Hanna*, 2 Bland, 26; *Alexander v. Todd*, 1 Bond, 175; *Bean v. Smith*, 2 Mas. 275; *Sands v. Codwise*, 4 John. 536. (2) Against this array of authorities the case of *Marshall v. Croom*, 60 Ala. 121, is relied on by opposing counsel as settling the contrary doctrine. The present case can be distinguished from that case, as the conveyance here attacked was made in secret trust for the grantor. There was no intent to vest the use and beneficial interest in the grantee, as in *Marshall v. Croom, supra;* but it was only a *colorable* transaction, and in secret trust for the grantor.—See 60 Ala. pp. 566-9. But it is respectfully submitted that the decision in that case is wrong in principle, and is not supported by the authorities. See authorities cited, *supra.* (3) It is further submitted that in the matter of costs the chancellor has not exercised a wise and equitable discretion, and that, as other equities are reviewed, this court ought to put some or all of the burden of this litigation upon the insurance company and Thames & Co. This point discussed.

R. H. CLARKE, *contra.*—(1) Complainant's original bill charged that Kelly had been enjoying the use of the lands; and, as it must be construed most strongly against the pleader, that is equivalent to an allegation that he held them for his own benefit, and not for the benefit of D. B. Jackson. Had he so held the "Home Place," he would not have been chargeable with rents for the benefit of complainant.—*Marshall v. Croom,* 60 Ala. 121; *Bernheim & Co. v. Beer*, 56 Miss. 149; *Robinson v. Stewart*, 10 N. Y. 189; *Simpson v. Simpson*, 7 Humph. (Tenn.) 275. There is a class of cases in which the constructively fraudulent grantee is held to have a lien upon the property for improvements or other expenditures made by him, upon the ground that the complainant, seeking equity, must do equity as to him; and where he has received profits, they will be set off against his claim, that he may simply be made whole. To this class belongs *Potter & Son v. Gracie*, 58 Ala. 303. There is another class, in which it is the duty of the fraudulent grantee to hold the property and receive its income in another

[Kitchell, adm'r, v. Jackson.]

capacity, and for the benefit of other parties. To this class belongs *Pharis v. Leachman*, 20 Ala. 662. There is still another class, in which the complainant has a specific claim to the property, drawing to it the right of possession; as where the grantee has by a fraud obtained title and possession from complainant. These cases are instanced as explaining some of the decisions charging the grantee with rents. It is not to be denied, that in some cases of conveyances in fraud of creditors, the grantees have been charged with rents, even where they have held for their own use and benefit. It will be found, however, that in none of them was the attention of the court drawn to the distinction so clearly pointed out in *Marshall v. Croom, supra*. Bump, in his work on Fraudulent Conveyances, p. 569, lays down the proposition that "the grantee may also be charged with the rents and profits that have accrued from the property"; but it is submitted, that most of the cases cited by him in support of the proposition do not sustain it. The one or two that do sustain him seem to consider the lien acquired by the creditor to be in the nature of a right to the possession. (2) Kelly was the fraudulent depositary of the legal title; Jackson remained in possession of the lands, and certainly was not liable for the rents thereof to complainant. As against complainant, Jackson was entitled to possession until a sale, either under his execution or his bill. If that be so, it is difficult to perceive how Kelly can be chargeable for leaving him in such possession. The insurance company held this tract, not under Kelly, but directly from Jackson and wife; and if the latter could not have been charged with rents, for the benefit of complainant, the company, holding *bona fide*, clear of fraud, can not occupy a worse position. It can be charged with rents only upon the theory that complainant had a lien entitling him thereto. But the lien he acquired by his bill was merely an equitable lien, in the nature of an execution lien at law.—*Marshall v. Croom, supra; Thames & Co. v. Rembert*, 63 Ala. 573. This lien did not entitle him to possession; and, therefore, it did not entitle him to rents. (3) Costs may be apportioned at the discretion of the chancellor.—Code, 1876, § 3900; 1 Brick. Dig. p. 733, § 1374. The complainant was cast as to more than two-thirds of the value of the property involved in the suit. Surely it was not unreasonable to charge him with two-thirds of the costs. But if this court should consider the costs to have been improperly imposed, it will not reverse solely on that account. 1 Brick. Dig. p. 733, § 1375.

SOMERVILLE, J.—The question presented is, whether the *grantee in a fraudulent conveyance is chargeable with the rents*

[Kitchell, adm'r, v. Jackson.]

*of the real estate*, which has been conveyed to him, the convey-
ance under which he holds having been declared void for actual
fraud, on bill filed by creditors of the grantor.   Where the
grantee holds under a *secret trust* for the benefit of the grantor,
it is every where conceded that he would be chargeable.   A
distinction was made, however, in *Marshall v. Croom*, 60 Ala.
121, exempting from the operation of this principle the case of
a mere fraudulent vendee, who holds under a conveyance, which
was intended to vest in him the legal title and beneficial use of
the property conveyed.   We are asked to review the correct-
ness of this rule as thus declared in this case.

We have given the subject a careful consideration, and
are of opinion that this case does not announce the sounder and
better doctrine, and ought to be overruled.   It is true that there
are some forcible reasons in favor of the principle as it is there
stated, which have induced its adoption by the highest courts
of some of our sister States.—*Robinson v. Stewart*, 10 N. Y.
189; *Simpson v. Simpson*, 7 Hump. (Tenn.) 275.   But we are
clear in the conviction that the opposite doctrine is not only
favored by a sound and controlling public policy, but is sus-
tained by a current of authorities which are rapidly approach-
ing comparative unanimity.   The obvious reason is, that a con-
veyance infected with *actual*, as distinguished from *construct-
ive* fraud, is *void* as to the creditors of the grantor, in all cases
where the grantee participates in the fraudulent intent of the
grantor.   It is the policy of the law to discourage fraud in all
of its phases, and especially actual fraud, which involves an in-
tent criminal in its nature, always difficult of detection, furtive
in its artifices, and damaging in the dishonesty of its conse-
quences.   It is the universal maxim of the law, as it is of com-
mon honesty, that no one shall be permitted to build a legal
right upon the basis of a legal wrong—that actual fraud can be
the source and origin of no right which will be recognized by
law.   Hence, the rule is that a fraudulent grantee must forfeit
every right, legal and equitable, sought to be derived from the
fraudulent conveyance, when the courts have once stamped on
it the *imprimatur* of their condemnation, declaring it void be-
cause of its being infected with fraud.   It has been well said
" that there is no instance of any reimbursement or indemnity
afforded by a court of equity to a *particeps criminis* in a case of
positive fraud."—Bump on Fraud. Con. (3d Ed.) 613.

This principle was applied in *Stapler v. Hurt's Ex'rs*, 16
Ala. 799, 805-6, so as to hold the fraudulent grantee liable for
the hire of certain slaves, from the time he obtained possession
of them.

The theory of the law in all such cases is, that the fraudu-
lent grantee must be considered as *a trustee of the rents and*
36

[Kitchell, adm'r, v. Jackson.]

*profits*, as well as of the *corpus* of the property itself, inasmuch as he acquired them through his own fraud, and that he, therefore, holds them in the right, and for the benefit of the attacking creditors. In *Bean v. Smith*, 2 Mason, 252, Mr. Justice STORY adjudged the fraudulent grantee to be chargeable with rents of lands declared to have been fraudulently conveyed to him, observing: "The principle is not new that a party who obtains an estate in fraud of the rights of another, shall be held the trustee of him whom he has defrauded. The doctrine has been applied even to those who claim as innocent parties, where it is directly through the fraud, without any intervening acts or considerations of their own; for it is against conscience that one person should hold a benefit derived through the fraud of another." "If the precedent were to be made for the first time," he adds, "I should have no difficulty in holding this doctrine upon the eternal principles of justice and morality."

The same rule was adopted by Judge MARSHALL in *Backhouse v. Jett*, 1 Brock. 500, where all the English authorities are reviewed with that great clearness and discrimination which ever characterize the decisions of this learned jurist. The liability was held to run from *the time of demand made by the creditor*, which was held to be from the date of the filing of the bill.

We need not consume time in reviewing the numerous American authorities holding the same doctrine. These are collated by Mr. Bump in his work on Fraudulent Conveyances; and we are of opinion that they are almost unanimous in support of the conclusion we have above announced.—Bump on Fraud. Con. (3d Ed.) 612, *note* 1; *Jones v. McLeod*, 61 Ga. 602; *Sands v. Codwise*, 4 John. 536; *Brown v. McDonald*, 1 Hill (S. C.), Ch. 297; *Strike v. McDonald*, 1 Bland (Md.), 57; *Ringgold v. Waggoner*, 14 Ark. 69; *Kipp v. Hanna*, 2 Bland (Md.), 26; 1 Freeman on Judg. § 352.

As to the time from which the rents or profits should be estimated, there is a conflict in the adjudged cases. We prefer the rule adopted in *Pharis v. Leachman*, 20 Ala. 662, 687, where they were allowed only from the *service of the summons* on the fraudulent grantee—which, strictly speaking, is the true time of *the demand* on him for the rents. In *Backhouse, Adm'r v. Jett's Adm'r*. 1 Brock. 500, the conclusion reached by Judge MARSHALL, after a full discussion of this particular point, was, that the account should be taken, not from the time of acquiring possession, but from the time of the demand, which he construed to be from the filing of the bill. In the case of fraudulent conveyances, as distinguished from mere secret trusts, at least, this seems the better rule, with the limitation we have above suggested, as followed in *Pharis v. Leachman*, *supra*.

[Mahan v. Smitherman.]

Under these views, the court erred in refusing to decree to complainant the rents received by the Planters' and Merchants' Mutual Insurance Company from the "Home place," which is described in the pleadings. They are chargeable for such rents from the time of the service of the summons on them, giving notice of the demand made by the complainant.

The taxing of the costs was a matter within the wise and just discretion of the chancellor, and is a matter not revisable in the appellate court.—Code, § 3900; 1 Brick. Dig. 733, § 1374.

The decree of the chancellor is reversed, and the cause remanded, that the proper account may be ordered by the chancellor to be taken by the register.