Leon C. ROE, J. B. Johnson, E. A. Dillard, Gwyn Crouse and Irby Jackson, Appellants,

v.

BAGGETT TRANSPORTATION COMPANY, Inc., Appellee.

No. 20179.

United States Court of Appeals Fifth Circuit.

Dec. 27, 1963.

Drayton N. Hamilton, Clifford J. Durr, Montgomery, Ala., for appellants.

James A. Simpson, William G. Somerville, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for appellee.

Before RIVES, WISDOM and GEWIN, Circuit Judges.

GEWIN, *Circuit Judge.*

This is the second time this case has been before this Court. The first opinion is reported in 228 F.2d 566 (5 Cir. 1956). The appellants, Roe, et als., are owner-lessors of motor trucks, and the appellee, Baggett Transportation Company, is a contract and common carrier. The suit was originally commenced in the year 1953 by the appellants seeking an accounting, and claiming a balance due from Baggett pursuant to the terms of certain leases called "equipment leases". The leases provided that the appellants were to be paid a percentage share of "earned revenue" or "revenue" derived from shipments of Government property. In their complaint the appellants alleged that they were paid less than their specified share of such revenue. When the case was first before the District Court, it was referred to a Special Master who found that the appellants were underpaid as to certain shipments and overpaid as to others, with a net balance in favor of the appellee. The District Court confirmed the Master's report with the exception of that portion which found a balance in favor of the appellee. On the first appeal this Court succinctly stated the issue to be:

> "Our narrow inquiry is, therefore, to determine whether, as held by the district court, the Master's conclusions find adequate support and reason on the face of his report."

The case was remanded because of the confirmation by the District Court of that portion of the Master's report which dismissed " * * * claims supported by incomplete evidence," which related to a total of 97 shipments. The District Court was instructed to require Baggett to make a full accounting; and further to exercise " * * * appropriate continued supervision to make certain that appellants do receive their share in all of such amounts ultimately collected and actually retained." [1]

---

1. The necessity for continued supervision is illustrated by the following from the opinion on the first appeal:

"As the report reflects prudent, vigorous action by Baggett in asserting its position with agencies of the United

■ On remand, the District Court again referred the case to the same Master, who rendered another report finding in effect that: (a) the parties had compromised and settled the claims based on the 97 shipments mentioned; (b) the parties had agreed that certain of the appellants' claims be held in abeyance pending the final outcome of a suit instituted by the appellee against the Government in the Court of Claims; and (c) all parties agreed, for the purpose of the report, on a *principal* amount due the appellants. There is no dispute as to any of the foregoing findings by the Master, but his report further stated:

"All factual issues having been agreed upon by the parties the only legal issue remaining is that of whether interest is due."

The Master concluded that pre-judgment interest was not due and the District Court confirmed the Master's report. The appellants here contend that pre-judgment interest is due, and that the District Court committed error in confirming the report which disallowed such interest.

The Master concluded that pre-judgment interest was not payable because the amount due was uncertain, and was incapable of being made certain until after the accounting. The report states:

"The sums here determined to be due plaintiffs are based upon actual receipts by the defendant as of this time. It is quite possible that in the future defendant will be required to refund to the United States some of those receipts. Thus, plaintiffs may be receiving judgment for a greater sum than they would be entitled to if judgment were rendered at some future date after possible refund to the government." [2]

In confirming the Master's report here involved, the District Court concluded:

"It is clear that the amounts to which the plaintiffs were entitled under their respective lease operating contracts could not be known until the respective mutual unliquidated accounts between each plaintiff and defendant were canvassed on reference. For that purpose the

---

States Government with no indication that it has gratuitously relinquished any right to higher rates which would have increased both its and the owner-lessor's revenues, appellants are, therefore, entitled to share only in the revenues finally collected and retained in that process." 228 F.2d 566, 572.

Also the following from the memorandum opinion of the District Court confirming the first Master's report:

"The amount of revenue which defendant will ultimately have received under each shipment is not determinable because defendant is now, and for all years concerned has been, engaged in a process of continuous accounting with the General Accounting Office."

2. Apparently, the matter of pre-judgment interest was not an issue on the first appeal. The opinion does not mention interest. ·On the former appeal this court concluded that no error resulted from the manner in which the Master reported; and that the trial court did not abuse its discretion in not requiring the Master to file a transcript of the proceedings, the evidence and the original exhibits. See

F.R.Civ.P. 53(e) (1). The fact findings of the Master were accepted as true. Therefore, we must accept as true the following finding in the original report of the Master, which is a part of the record on this appeal pursuant to a stipulation of the parties approved by this Court:

"In the complicated field of rate making, there is room for a reasonable divergence of expert opinion. The determination of a correct rate, as was stated by the witnesses for both parties, is largely a matter of expert opinion. Throughout the trial of this case there were many instances of direct conflict of expert testimony. This conflict is pointed out hereinafter and resolved so as to reconcile the conflict where possible. In many instances Mr. Jones, the rate expert for the defendant was supported by the evidence of the position of the General Accounting Office and the Comptroller General of the United States, whereas Mr. Forshaw, expert for the plaintiffs, was in the position of testifying that Mr. Jones, the General Accounting Office or the Comptroller General was wrong."

aid of this court was invoked. To avoid tedious delay in General Accounting Office activity of indefinite duration the parties agreed upon the amounts finally due.

"Under the Alabama authorities, Grand Bay Land Company v. Simpson [207 Ala. 303], 92 So. 789, 791; Mobile & O. R. Co. v. Williams [219 Ala. 238], 121 So. 722, and Norris v. Wynne [247 Ala. 100], 22 So.2d 730, the balances due should not bear interest except from the date hereof."

In support of its contention that pre-judgment interest is due, appellants rely primarily on Title 9, § 62 of the Code of Alabama 1940 (Recompiled 1958).[3] The appellants cite numerous Alabama decisions. Many of the cases relied on by appellants involve fraud, but the Master found that no fraud existed here. Other decisions relied on by appellants involved either a sum certain or sums which could be readily and accurately ascertained.

The Alabama decisions interpreting the above mentioned code section clearly hold that pre-judgment interest runs only on such sums as are certain or are capable of being made certain. In our opinion, the rule is best stated by the Supreme Court of Alabama in Grand Bay Land Co. v. Simpson, 207 Ala. 303, 92 So. 789 (1922):

"In his Law of Interest, Mr. Perley formulated some general rules for the allowance of interest, deducible from the great mass of decisions, to wit: (1) The amount due must be certain; (2) the time when it is due must be certain; (3) the amount due and time of payment must be known to the debtor. Pages 25–32. In the instant suit the balance for which the aid of a court of equity was invoked could not be known until the respective mutual, unliquidated accounts were canvassed on reference and the rendition of final decree approving such finding of the register. The balance of mutual unliquidated accounts should not bear interest except from the date of the final decree. Were the balances liquidated, no necessity would exist for resort to a court of equity in aid of ascertainment and enforcement, and a suit therefor should have been prosecuted at law. Julian v. Woolbert, 202 Ala. 530–532, 81 So. 32; Grand Bay Land Co. v. Simpson, supra. Such, however, was not the case made by the pleadings and evidence. Moreover, it required a construction of the contract of the parties on former appeal that a just and true accounting between them might be had on a reference. Such was the purport of the bill considered on first appeal.

"Appellee's insistence is that interest is statutory and runs upon each item of account from its due date. Code 1907, § 4620. If this rule be applied to mutual, unliquidated accounts, it can only be as to ascertained 'balance' in money that should have been paid. The balance in favor of complainant could not be ascertained before the reference and its confirmation by the court. Railroad Co. v. Swasey, 23 Wall. 405, 23 L.Ed. 136; Lodge v. Twell, 135 U.S. 232, 10 Sup. Ct. 745, 34 L.Ed. 153; Stapler v. Hurt['s Ex'rs], 16 Ala. 799; Code 1907, §§ 3157–3161."[4]

The history of this litigation, extending over a period of 10 years, involving an accounting, two proceedings in the trial court wherein hearings were held before a Special Master, two appeals to this Court, the exhibits, disputes as to

---

**3.** Title 9, § 62 provides:
"Interest accrues on breach of contract.—All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty, bear interest from the day such money, or thing estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money performed."

**4.** § 4620 of the 1907 Code is the predecessor of Title 9, § 62 of the present Alabama Code.

tariff rates, conferences between counsel and the Special Master, and finally compromise, clearly demonstrate the uncertainty involved, and point to the conclusion that the sums claimed to be due were uncertain.[5]

The judgment is affirmed.

5. There were two appeals in the Grand Bay case, the first being reported in 205 Ala. 347, 87 So. 186 (1920). While the filing of a complaint for an accounting does not conclusively prove that the amount claimed is uncertain, the first Grand Bay decision contains the following pertinent statement:

"The mere filing of a bill for accounting implies that there were items on both sides, that the balance is uncertain, and that the true amount and to whom due must be ascertained by the court."

The following observation made by Judge

Brown on the first appeal in this case also seems pertinent:

"Obviously a proper action for accounting in both substance and procedure, involving hundreds of distinct shipments of countless commodities to and from numerous points, presenting thus the inevitable esoteric mysteries of application and interpretation of carrier tariffs, the court referred it all to a Master who heard extensive evidence and filed a detailed 115-page, analytical, well-organized report."