**Charles Donald BELCHER, Plaintiff,**

v.

**BIRMINGHAM TRUST NATIONAL BANK et al., Defendants,**

**W. E. Belcher Lumber Company, Inc., Defendant-Appellant,**

**American Appraisal Company, Appraiser-Appellee.**

**No. 72–3318.**

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1973.

Rehearing and Rehearing En Banc Denied March 7, 1974.

See also, D.C., 348 F.Supp. 61.

W. Eugene Rutledge, Birmingham, Ala., for W. E. Belcher Lumber Co.

Reid B. Barnes, W. E. Gibson, Birmingham, Ala., for American Appraisal Co.

Charles E. Clark, Birmingham, Ala., for C. D. Belcher.

Robert H. Loeb, Birmingham, Ala., for Robena B. Davis.

Before WISDOM, DYER and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This appeal is a byproduct of the settlement of a suit between the majority and minority shareholders of the W. E. Belcher Lumber Company, Inc. After settlement of this suit, it was necessary to obtain an appraisal of the company's assets, and the district court appointed a Special Master, W. A. Jenkins, for this purpose. The Master engaged the American Appraisal Company of Milwaukee, Wisconsin, to conduct the appraisal, and the court approved his action. The dispute here concerns the fee charged by American for its work. Although American's client was the Special Master, its fee was assessed against Belcher (the majority interest), and the company is unhappy about the amount which the court, on the basis of the Master's petition, ordered it to pay. We vacate the court's order regarding the amount of the fee and reverse its decision awarding prejudgment interest to American.

I.

The relevant portion of the district court's order provides as follows:

"After careful consideration of all the evidence involved and the governing principles, the Court is of the opinion that a total fee of $33,300 (over and above the amount of $25,000 paid by the receiver on January 13, 1969 as an advancement to said American Appraisal Company for its services rendered) plus interest on said unpaid principal of $33,300 at 6% per annum from January 13, 1969, would be reasonable compensation for said American Appraisal Company."

The first issue is whether there is evidentiary support for the court's conclusion that a total of $58,300 is reasonable compensation for the appraisal work done by American. The district court gave no further explanation than that quoted above for its decision. Thus to resolve this issue it has been necessary to reconstruct, as best an appellate court can, the evidence as it was presented to the trial court.[1] Our conclusion is that the district court's decision is amply supported by this record.

The pervasive problem is that we are unable to ascertain, with sufficient certainty, the basis for the court's award of $58,300. American submitted a total claim for $80,520.81. It was based on two invoices involving two different phases of the total appraisal. One invoice related to the inventory of lumber located at Belcher's various mills and was for $22,220.81. The other invoice was for $58,300 and covered the appraisal of the company's other assets such as equipment and buildings. Because the court's award equals the amount of the latter invoice, Belcher assumes that the court decided to give nothing for the lumber inventory and accordingly reduced the total bill by $22,220.81, leaving the $58,300 figure. Belcher then points to the evidence, in the form of a computer printout prepared by American, establishing that American's costs for the total appraisal were $64,253.84 and reasons that $16,266.97 of the $80,520.81 total claim is unsupported by any evidence. Belcher has labeled this $16,000 figure an "unknown". We agree with Belcher that there is an absence of evidentiary support for this charge; an award of any more than $64,253.83 would not have been justified on this record. We are unconvinced, however, that Belcher will be required by the court's order to pay $16,000 for the alleged unknown charge.

The argument has some appeal at first blush, but is unpersuasive when set against the record here. In the first place, Belcher assumes that the $58,300 awarded by the court includes the unsupported $16,000 figure. This assumption is unwarranted; it is founded on the proposition that because the court's award was the exact amount demanded for the non-inventory phase of the ap-

1. In addition to the appendix submitted by the parties, we have examined the transcript of testimony at the trial, the depositions available to the court, and the exhibits introduced there.

praisal, the court must have given nothing for the inventory. The conclusion is thus reached that the $58,300 includes at least a portion of the unsupported $16,000. But it is undisputed that an inventory was conducted and that substantial man hours were exhausted in completing this aspect of the appraisal. It is unrealistic to presume that the court awarded American nothing for its labors toward preparing an inventory of Belcher's lumber while awarding the full amount for the other aspects of the appraisal. This all or nothing argument is not persuasive.[2]

Instead of the almost mechanistic approach taken by Belcher, we believe that the court's statement in its order that $58,300 was "reasonable compensation" means exactly that. The court was faced with American's bill for $80,000, a computer printout establishing its cost at $64,000 and vociferous arguments from Belcher that any amount over $30,000 was too much. The court resolved the conflict by awarding what it believed was a reasonable amount—$6,000 less than the company's established cost and $22,000 less than the amount billed. The computer summary of American's costs furnishes adequate evidentiary support for this decision unless there is some other reason to conclude that the decision is unreasonable.

█ The question arises because American's original proposal to the Special Master recited a fee of $45,000. This was to include both a current appraisal and an appraisal as of 1963; at the Master's direction the latter appraisal was abandoned. American subsequently submitted an $80,000 bill, although its costs were established at $64,000. In light of these developments we have carefully scrutinized the record to make certain that the court's decision awarding $58,300 to American is a fair resolution of this case. Although the

discrepancy between the proposal and the fee awarded by the court is indeed significant, we find that the court's decision is reasonable and fair under the circumstances of this case.

There was testimony that a variance, sometimes by as much as 20%, often results between a fee recited in a proposal and the final fee charged after the work has been performed. A variance of this nature could apparently occur on most any job being conducted under normal conditions. Evidence was introduced to support American's contention that the appraisal of Belcher's property was accompanied by problems not generally encountered with other appraisals. Although the evidence does not support American's original claim that Belcher was uncooperative in the actual taking of the inventory, there were difficulties which arose prior to the time the actual count began. At one point it was contemplated that a court order might be required in order to secure Belcher's cooperation. It was not, but this is only one example of the rather unusual circumstances surrounding the entire appraisal process. In short, there is support for the district court's implicit conclusion that the appraisal, including both the inventory and the non-inventory aspects, was not conducted under normal conditions nor under the conditions contemplated at the time the original proposal was made.

Moreover, it came as no surprise that the fee demanded exceeded the fee quoted in the proposal. American was aware that its costs were going above the estimate and notified its client, the Special Master, of this development. The court was likewise informed, at an early date and prior to the time any invoices were submitted, that American was experiencing difficulties with the appraisal and that there would be a substantial variance between the proposal

---

2. Belcher's position also assumes that the court disregarded all other evidence including the computer printout and based its calculation solely on the total $80,000 claimed by American. Again this assumption attributes

too much significance to the fact that the court's final award of $58,300 is the total amount claimed minus the charge for the inventory.

and the final fee. The final product of American's endeavor was a thorough and accurate appraisal. There is no indication that this desirable result could have been obtained in some other manner or by the expenditure of less time and effort by American. The evidence belies the conclusion that the district court simply plucked the $58,300 figure from the air and decided to award this amount as compensation to American. This is not to say that another figure might not also represent reasonable compensation, but we cannot say under all the circumstances of this case that the district court acted unreasonably, unfairly or without a basis for its decision.[3]

■ We hold, therefore, that the district court's decision regarding the amount of compensation to American is sustained by the record. Nevertheless the problem remains: we are unable to conclude that the district court did not consider the unsupported $16,000 in reaching its conclusion to award a total of $58,300. It is therefore appropriate to vacate the court's order and remand with directions that the court reexamine its decision in this regard.[4]

## II.

The second and final issue is whether the district court erred in allowing American to recover prejudgment interest on the portion of the court's award not covered by American's earlier advancement. On January 13, 1969, Belcher made a payment of $25,000 to American. This amount was deducted from the court's total award of $58,300, leaving $33,300; on this amount the court awarded prejudgment interest of $7,045.06 from January 13, 1969, the date the advancement was made, until July 24, 1972, the date of the court's decree.

■ To the general rule in Alabama that interest is not allowed on unliquidated demands, Grand Bay Land Co. v. Simpson, 207 Ala. 303, 92 So. 789 (1922), there are two interrelated exceptions: (1) when the amount of damages are capable of being ascertained by mere computation; and (2) when the damages are complete at a particular time and can be determined as of such time in accordance with fixed rules of evidence and known standards of value. Mobile & O. R. R. v. Williams, 219 Ala. 238, 121 So. 722, 730 (1929). A typical case illustrating the application of these exceptions is Atlanta & B. Air Line Ry. v. Brown, 158 Ala. 607, 48 So. 73 (1908). Brown involved a trespass action against the railroad for damages to Brown's crops. The Supreme Court of Alabama reasoned that the standard for determining damages was the value of the crops at the time they were destroyed. The court held that Brown was entitled to prejudgment interest because "where the damages claimed are for property which has been destroyed or injured, which has an ascertainable money value, it is proper to instruct the jury to add, to the damage ascertained, interest

3. In Andrews v. Frierson, 144 Ala. 470, 39 So. 512 (1905), the Alabama Supreme Court was faced with a situation similar to that involved in this appeal. The question was the value of services rendered by an auctioneer; the case had been referred to a register but his decision was modified by the trial court. The supreme court reversed and reinstated the register's decision, using language particularly appropriate to the situation in the case at bar. The court stated:

"We have carefully read and re-read all the legal evidence that was submitted to the register, and without going into further details of it, we think it hardly probable that any two minds would ever draw the same conclusion from it. As the result of our examination of the evidence we feel no full conviction that the register's conclusion as to the value of the services is wrong. His conclusion is not unreasonable, . . . ." Id. at 514.

4. This action should not alter counsel's assertion on oral argument that this case brings to an end the extended proceedings associated with the controversy between the majority and minority interests of the Belcher Lumber Company.

from the date when the injury was done." *Id.* at 78.[5]

■ Roe v. Baggett Trans. Co., 326 F.2d 298 (5th Cir., 1963), illustrates the type of situation in which prejudgment interest is not allowed. The question there was whether the · owner-lessor (Roe) of motor trucks was entitled to prejudgment interest from the lessee-motor carrier (Baggett) on amounts due under equipment leases providing for payment to Roe of a certain percentage of revenue from shipments of government property. A special master had previously been appointed to supervise an accounting, and the dispute on appeal concerned only the matter of prejudgment interest on the amount determined due. Judge Gewin succinctly summarized the applicable law. "The Alabama decisions . . · . clearly hold that prejudgment interest runs only on such sums as are certain or are capable of being made certain." *Id.* at 301. Applying these principles the court held that Roe was not entitled to prejudgment interest. The following statement explains the rationale for the court's decision and is particularly instructive to the case at bar:

"The history of this litigation, extending over a period of 10 years, involving an accounting, two proceedings in the trial court wherein hearings were held before a Special Master, two appeals to this Court, the exhibits, disputes as to tariff rates, conferences between counsel and the Special Master, and finally compromise, clearly demonstrate the uncertainty involved, and point to the conclusion that the sums claimed to be due were uncertain."

*Id.* at 301–302. *See* Norris v. Wynne, 247 Ala. 100, 22 So.2d 730 (1945). The present case does not fit the pattern established in the Alabama cases awarding prejudgment interest on unliquidated damages. Because of the parallels be-

tween Roe v. Baggett Trans. Co., *supra*, and the instant case, the district court's decision allowing prejudgment interest to American must be reversed.

The district court's decision is therefore affirmed in part and reversed in part, and vacated and remanded in part for proceedings not inconsistent with this opinion.

5. *See, e. g.*, Fuller v. Fair, 202 Ala. 430, 80 So. 814 (1919) ; Sharpe v. Barney, 114 Ala. 361, 21 So. 490 (1897) ; *see generally* Mobile & O. R. R. v. Williams, 121 So. 722 (1929).