46811.   HENLEY v. MABRY et al.

SUBMITTED JANUARY 6, 1972—DECIDED JANUARY 13, 1972.

*E. T. Hendon, Jr.,* for appellant.
*Murphy, McFarland & Turoff, Martin McFarland,* for appellees.

CLARK, Judge. After the appellees here had obtained a verdict for $4,000 in the Superior Court of DeKalb County and taken an appeal to this court which was decided adversely to them in *Mabry v. Henley,* 123 Ga. App. 561 (181 SE2d 884), Henley tendered to the DeKalb County Sheriff

the amount of the principal, plus court costs, but without interest, and requested the appellees to accept said sum and cancel the judgment. Appellees declined to accept the amount paid the sheriff, claiming they were entitled to interest from the date of judgment at 7% per annum. Thereupon, Henley filed this action for a declaratory judgment, contending that the other parties had taken the previous appeal and, therefore, were not entitled to interest. The trial court ruled against Henley.

The question for decision as succinctly stated in appellant's brief is: "Is a successful party of a money judgment in the lower court, who appeals unsuccessfully his favorable judgment, entitled to interest on his judgment during the pendency of his appeal?"

Appellant's able counsel asserts this to be a question of first impression in our State and urges adoption of the rule which law encyclopedias agree to be the majority rule in this country. 47 CJS 68, § 59; 45 AmJur 92, § 107; 15 ALR3d 411, 415. This majority rule holds that a judgment creditor who appeals unsuccessfully on the ground of inadequacy is not entitled to interest for the period during which his appeal is pending. We decline to adopt the majority rule because we are bound by the explicit language of *Code* § 57-108: "*All* judgments in this State *shall* bear lawful interest upon the principal amount recovered." (Emphasis supplied.)

Historically we find that section in the exact verbiage with the exception of the word "shall" to have been contained as Section 2027 in the 1863 Code. Subsequent codifiers until the 1933 Code followed this same language continuing omission of the word "shall." The codifiers of the 1933 Code apparently referred back to the original laws of 1845, page 36, and discovered therein the mandatory word "shall." Thereupon, they added this obligatory directive.

Despite the persuasive arguments we have read in the opinions of those courts which follow the majority rule, we regard it to be the duty upon this court to follow the dic-

tate stated succinctly by Chief Justice Jackson[1] in *Daniel v. Gibson,* 72 Ga. 367, 369 (53 AR 845): "But we would not, if we could, because it is the law of this State by statute, and, of course, without regard to the decisions of other courts on the common law or law merchant, or on the statute law of other states, however high their authority, our own statute must control us."

Not only are we bound by the explicit "all" and the mandatory word "shall" in *Code* § 57-108, but we find an early Supreme Court ruling to this effect in *Mayor &c. of Savannah v. Champion,* 54 Ga. 541, supra.

The trial judge ruled correctly in holding that the judgment carried interest from its date.

*Judgment affirmed. Jordan, P. J., and Deen, J., concur.*

---

[1]James Jackson is one of the quartet of Georgia's great Chief Justices whose busts adorn the lobby of our Judicial Building, the other three immortals being Bleckley, Lumpkin and Russell. Little known is the fact that C. J. Jackson was the grandson of the illustrious Savannahian bearing the same name who resigned as United States Senator and returned to Georgia in order to rectify the fraud done through the Yazoo Act. His leadership brought about the Rescinding Act of 1796 with the legislature directing the fire for destruction of the obnoxious papers be lit from the sun by a burning glass. Prophetic were the words of anathema pronounced on this occasion: "God save the State! and long preserve her rights! and may every attempt to injure them perish as these corrupt acts now do!!"