SHOOK & FLETCHER INSULATION COMPANY, a Corporation, Plaintiff-Appellee, Cross-Appellant,

v.

CENTRAL RIGGING & CONTRACTING CORPORATION, a Corporation; Fireman's Fund Insurance Company, a Corporation, Defendants-Appellants, Cross-Appellees.

No. 81–7600.

United States Court of Appeals, Eleventh Circuit.

Sept. 7, 1982.

Smith, Currie & Hancock, Burt R. Oastler, Griffin, Cochrane & Marshall, Rodney C. Jones, Atlanta, Ga., for defendants-appellants, cross-appellees.

Stokes & Shapiro, Ronald J. Garber, Ira J. Smotherman, Jr., Atlanta, Ga., for plaintiff-appellee, cross-appellant.

Before INGRAHAM,* HATCHETT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

In this diversity action, Shook & Fletcher Insulation Company ("Shook & Fletcher"), the appellee and cross-appellant, sued Central Rigging & Contracting Corporation ("Central Rigging") and Central Rigging's surety, Fireman's Fund Insurance Company, the appellants and cross-appellees,[1] for several claims arising in connection with the construction of a cement factory in Demopolis, Alabama. Central Rigging was the general contractor in charge of this construction project and Shook & Fletcher was a subcontractor responsible for installing insulation. Shook & Fletcher in this lawsuit sought to recover additional compensation for extra work performed beyond the requirements of the subcontract. The district court initially granted partial summary judgment in favor of Shook & Fletch-

---

* Honorable Joe Ingraham, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. The appellants/cross-appellees have been represented by the same counsel, have filed joint pleadings, motions, and briefs, and raise the same issues on appeal. In the interest of simplicity, this opinion will refer collectively to the appellants/cross-appellees as "Central Rigging."

er and, after a two-day bench trial, rendered judgment in full for Shook & Fletcher on all of its claims.

Central Rigging challenges the district court's judgment with respect to only one of Shook & Fletcher's claims, a claim for $88,314.71 for the installation of 16,951 square feet of additional insulation. With respect to this claim, Central Rigging also attacks the district court's denials of motions for a new trial and to open the judgment and take new evidence. Shook & Fletcher cross-appeals from the district court's denial of prejudgment interest and refusal to apply an increased statutory post-judgment rate of interest.

We find that Central Rigging's assertions on appeal are devoid of merit and we therefore affirm the district court with respect to Central Rigging's appeal. On the cross-appeal, however, we must reverse the district court as we conclude that Shook & Fletcher is entitled to prejudgment interest and an increased rate of post-judgment interest.

## I.  CENTRAL RIGGING'S APPEAL

■ Central Rigging's major contention on appeal, as well as at trial, is that Shook & Fletcher failed to prove that Shook & Fletcher actually installed the extra insulation as opposed to merely purchasing the insulation or having it delivered to the job site. Central Rigging concedes that two witnesses for Shook & Fletcher testified at trial that they personally measured in the field and by diagrams the actual insulation installed and that their measurements establish that Shook & Fletcher installed 16,-951 square feet of insulation more than the subcontract required. Central Rigging introduced no evidence at trial on the amount of insulation installed, and the district court, after hearing all the evidence and viewing the demeanor of the witnesses on cross and direct examination, credited the testimony of Shook & Fletcher's witnesses.

Central Rigging challenges this finding of fact and credibility choice by the district court. This claim is utterly without merit.

The district court's "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Fed.R.Civ.P. 52(a). *Dickens v. United States,* 545 F.2d 886, 890 (5th Cir. 1977). The district court's findings of fact are in no way clearly erroneous, and indeed are amply supported by the record. We decline, as indeed the law commands we must, Central Rigging's invitation to second guess the credibility choices of the district court that had the opportunity to observe the witnesses' demeanor.

■ Similarly, we must reject Central Rigging's claim that its motion for a new trial on the ground that the verdict was against the great weight of the evidence was erroneously denied by the district court. A motion for a new trial is committed to the sound discretion of the district court and the district court's decision should not be reversed unless there is a showing that the district court abused its discretion. *Ellis v. Chevron U.S.A., Inc.,* 650 F.2d 94, 97 (5th Cir. 1981). There is nothing in the record that even suggests that the district court abused its discretion in denying Central Rigging's motion for a new trial.

■ We also find no error in the district court's denial of Central Rigging's motion to open the judgment and to take new evidence. Central Rigging's "new evidence" consists of an affidavit by one Robert Skinner, who claims to have measured the insulation installed and who disputes the testimony offered on this issue by Shook & Fletcher. Central Rigging cannot complain about the district court's refusal to consider this evidence because Central Rigging, had it exercised due diligence, could have introduced this evidence at trial. *See NLRB v. Jacob E. Decker & Sons,* 569 F.2d 357, 363 (5th Cir. 1978); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 390–91 (5th Cir. 1977); *Owens v. International Paper,* 528 F.2d 606, 611 (5th Cir. 1976); *Luhrsen v. Vantage Steamship Corp.,* 514 F.2d 105, 106 (5th Cir. 1975); *United States v. 41 Cases, More or Less,* 420 F.2d 1126, 1132 (5th Cir. 1970).[2]

---

2. The cases cited by Central Rigging are inapposite. Failure to exercise due diligence has not barred opening the judgment and taking

■ Central Rigging also contends that by virtue of the result in certain arbitration proceedings, Shook & Fletcher's claim is barred by the doctrines of res judicata, collateral estoppel, and equitable estoppel. The doctrines of res judicata and collateral estoppel cannot bar Shook & Fletcher's claim because Shook & Fletcher was not a party to this prior arbitration proceeding and there is no evidence in the record that Shook & Fletcher is in privity with any of the parties to the arbitration. Moreover, there is no evidence in the record that the issues or causes of action resolved by the arbitration are the same as those presented in this case. *See Stevenson v. International Paper Co.*, 516 F.2d 103, 108–11 (5th Cir. 1975); *Wheeler v. First Alabama Bank*, 364 So.2d 1190, 1199 (Ala.1978); *Teague v. Motes*, 57 Ala.App. 609, 330 So.2d 434, 437–38 (1976).[3] The district court correctly found that Central Rigging had waived the affirmative defense of equitable estoppel because Central Rigging did not raise this defense in any pleading or in the pretrial order and only first asserted this defense in a post-trial brief. Moreover, our review of the record reveals no facts on which Central Rigging could make out a meritorious claim of equitable estoppel.

## II. SHOOK & FLETCHER'S CROSS–APPEAL

■ The district court denied Shook & Fletcher's request for prejudgment interest because the court concluded that, under Alabama law, "prejudgment interest runs only on such sums that are certain or are capable of being made certain ... [and] Shook & Fletcher's claims did not represent sums certain prior to the determinations made on the issues at trial." Record on Appeal, vol. III, at 899–900. Regardless of whether Shook & Fletcher's claims represent "sums certain," we are convinced that Alabama law authorizes the award of prejudgment interest on Shook & Fletcher's claims.

Alabama Code Section 8–8–8 provides that:

> All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at money's value, should have been paid, or such act, estimating the compensation therefore in money, performed.

The cases establish that prejudgment interest is appropriate "when the damages are complete at a particular time and can be determined as of such time in accordance with fixed rules of evidence and known standards of value." *Belcher v. Birmingham Trust National Bank*, 488 F.2d 474, 477 (5th Cir. 1973). *See Mobile & Ohio Railroad v. Williams*, 219 Ala. 238, 121 So. 722, 730 (1929); *Atlanta & Birmingham Air Line Railway v. Brown*, 158 Ala. 607, 48 So. 73 (1908). There is no dispute in the present case that the damages were complete as of the date when Shook & Fletcher billed Central Rigging for the extra work performed. Central Rigging argues, however, that the unit price and the quantity of insulation installed were both contested at trial. Reply Brief of Appellant/Cross-appellee at 23.

Even if Central Rigging's assertion is true, this would not defeat Shook & Fletcher's right to recover prejudgment interest. The Alabama cases do not impose as a prerequisite to obtaining prejudgment interest that the amount of damages be beyond dispute; rather, the cases only require

---

new evidence where the newly discovered evidence is "practically conclusive," *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697, 698 (5th Cir. 1955) (photocopies of money orders establishing payment of debt), or "virtually conclusive," *Johnson Waste Materials v. Marshall*, 611 F.2d 593, 595 (5th Cir. 1980) (cancelled checks establishing that defendant paid the minimum wage to some of his employees), or establishes an error in the judgment "with almost mathematical certainty," *W. S. Dickey Clay Manufacturing Co. v. Corder*, 310 F.2d 764, 774–75 (5th

Cir. 1962) (alleged math errors in computing railroad rates and weights). We do not find the new evidence offered by Central Rigging to be of such a conclusive nature.

3. The district court applied Alabama law to decide the substantive issues and the prejudgment interest issue and Georgia law to decide the post-judgment interest issue. Neither party challenges on appeal this choice of law, and therefore we need not consider the choice of law issues.

that the amount of damages be "ascertain able." *Atlanta & Birmingham Air Line Railway v. Brown*, 48 So. at 78 (emphasis added). In contract cases especially, the Alabama courts have not hesitated to award prejudgment interest, notwithstanding that the amount of damages may have been subject to considerable dispute at trial. In *State Farm Automobile Insurance Co. v. Reaves*, 292 Ala. 218, 292 So.2d 95 (1974), the Alabama Supreme Court, after characterizing a claim by an insured against his insurer for bodily injury caused by an uninsured motorist as a "contract action," *id.* at 102, rejected the insurance company's argument that prejudgment interest was inappropriate because "uninsured motorist claims are always unliquidated until final judgment . . . ." The court reasoned that:

> Under appellant's reasoning, no uninsured motorist claim could become a liquidated debt due a policyholder until after full trial. This argument proves too much. Certainly, there may be disagreements between insurer and insured as to how much (or whether any sum) is rightfully due, and that disagreement ultimately may have to be settled in a court of law. *But such is true of other contract actions as well. In such a case, the court determines after the fact the amount*

which was owed at the time demand was made and the contract breached by refusing that demand. We do not read the insurance policy before this Court as requiring a full trial before the benefits become payable under the policy.

*Id.* at 102–03 (emphasis added). *Accord State Farm Mutual Automobile Insurance Co. v. Bradley*, 293 Ala. 695, 309 So.2d 826, 829–30 (1975); *Great American Insurance Co. v. Railroad Furniture Salvage*, 276 Ala. 394, 162 So.2d 488, 495 (1964). *See Parker v. Sutton*, 47 Ala.App. 352, 254 So.2d 425, 428 (1971).[4]

We have no difficulty determining that Shook & Fletcher is entitled to prejudgment interest in this case. The damages sought by Shook & Fletcher to redress Central Rigging's breach of contract could be ascertained, as indeed they were, "in accordance with fixed rules of evidence and known standards of value."[5] Central Rigging has had the use of the money owed to Shook & Fletcher during the entire pendency of this litigation. A contrary rule on prejudgment interest might only encourage obstreperous conduct by losing defendants during inflationary periods due to the time value of money. We decline to create such incentives. *See C.E. Sawyer's Industrial Sheet Metal Fabricators, Inc. v. Central Rigging & Contracting Corp.*, 653 F.2d 956, 958 (5th Cir. 1981).[6]

---

**4.** *Grand Bay Land Co. v. Simpson*, 207 Ala. 303, 92 So. 789 (1922), *Roe v. Baggett Transportation Co.*, 326 F.2d 298 (5th Cir. 1963), and *Belcher v. Birmingham Trust National Bank*, 488 F.2d 474 (5th Cir. 1973), are distinguishable from this case. In each of those cases, the plaintiff sought an equitable remedy that *necessitated* court intervention and the application of equitable principles in order to determine the appropriate measure of relief. This point was made expressly in *Grand Bay Land Co. v. Simpson* where the court observed:

> In the instant suit, the balance for which the aid of a court of equity was invoked could not be known until the respective mutual, unliquidated accounts were canvassed on reference and the rendition of final decree approving such finding of the register. The balance of mutual, unliquidated accounts should not bear interest except from the date of the final decree. Were the balances liquidated, no necessity would exist for resort to a court of equity in aid of ascertainment and enforcement, and a suit therefore should have been prosecuted at law.

92 So. at 791. Whether the Alabama courts would still recognize this exception to Alabama Code § 8-8-8 for cases where an equitable remedy is sought in a contract dispute is a matter over which we have no occasion to pass judgment.

**5.** The dispute over the per unit price of the extra insulation could be resolved as a matter of contract interpretation, and the amount of extra insulation actually installed was determined by a factual inquiry.

**6.** *C. E. Sawyer's Industrial Sheet Metal Fabricators, Inc. v. Central Rigging & Contracting Corp.* was a companion case to the present matter that arose out of the same construction project. In *C. E. Sawyer's*, the former Fifth Circuit affirmed an award of prejudgment interest notwithstanding that the amount of extra work properly performed was in dispute and the district court in that case reduced the plaintiff's judgment by certain credits granted to the defendant. 653 F.2d at 957 & 958; Brief of Appellant at 9–14, *C. E. Sawyer's Industrial Sheet Metal Fabricators, Inc. v. Central Rigging*

■ Lastly, Shook & Fletcher appeals the district court's decision that post-judgment interest should accrue at a rate of 7% per year. Shook & Fletcher argues that while the 7% interest rate is proper for the period from the date of judgment until July 1, 1980, thereafter the interest rate should be 12% per year pursuant to an amendment to Georgia Code § 57–108 that became effective on July 1, 1980. We agree, and therefore we reverse the district court's order to the extent that it denied Shook & Fletcher post-judgment interest at a rate of 12% per year commencing July 1, 1980, for the period of time the judgment remains unsatisfied.

On March 25, 1980, Georgia amended Georgia Code § 57–108 so that this statute now reads: "All judgments in this state shall bear interest upon the principal amount recovered at the rate of twelve per cent per year." The Act promulgating this change in the rate of interest (from 7 to 12%) contained no provision specifying the effective date of the change, see 1980 Ga. Laws 1118, so by the operation of Georgia Code § 102–111 the Act became effective on July 1, 1980.

Although the Act amending § 57–108 did not address what interest rate should apply to judgments rendered before July 1, 1980, but not yet satisfied by that date, the literal language of the statute reads, "*All* judgments in this state shall bear interest . . ." (emphasis added). This literal approach to interpreting this statute has already been followed in another context by the Georgia courts. In *Henley v. Mabry,* 125 Ga.App. 293, 187 S.E.2d 309, 310 (1972), the Georgia Court of Appeals declined to follow the rule of the majority of American jurisdictions that a judgment-creditor who unsuccessfully appeals his judgment on the grounds of inadequacy is not entitled to interest during the pendency of his appeal. The *Henley* court allowed a judgment-creditor to recover full post-judgment interest, notwithstanding his unsuccessful appeal, because of the literal language of the statute.

The parties, the district court, and this court have not found any controlling state precedent on whether the amended interest rate applies to all judgments outstanding after July 1, 1980, or only to those judgments entered after July 1, 1980.[7] There are, however, substantial policy grounds for giving the statute literal effect. The purpose for increasing the rate of interest accruing to judgments was to acknowledge an increase in interest rates in general and to bring the rate of interest on judgments into parity with other comparable market rates of interest. If the legal rate of interest for judgments remains significantly lower than the prevailing market rates of interest, then judgment-debtors would have a strong incentive to delay paying their judgments as long as possible in order to capitalize on this difference. Judgment-creditors, in turn, would increasingly be compelled to resort to levying, attachment, and other judicial remedies to enforce their judgments. This windfall to judgment-debtors and burden on judgment-creditors and the state courts are a state of affairs that Georgia could reasonably seek to avoid. These policy concerns apply with equal force for all judgments outstanding as of July 1, 1980, as

---

& Contracting Corp.; Brief of Appellee at 8–12, id.

7. In *Camellia Corp. v. Cornell,* 157 Ga.App. 625, 278 S.E.2d 168, *rev'd,* 248 Ga. 449, 283 S.E.2d 264 (1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1744, 72 L.E.2d 157 (1982), the Georgia Court of Appeals was confronted on cross-appeal with precisely the issue we now face. The Georgia Court of Appeals, however, declined to decide this issue (as well as several issues raised by the defendant-appellant in that case) because that court on the merits reversed the judgment obtained by the plaintiff/cross-appellant. 278 S.E.2d at 170. The Georgia Supreme Court reversed this decision by the Georgia Court of Appeals and reinstated the plaintiff's jury verdict. The Georgia Supreme Court concluded its opinion by commenting, "We have also examined the remaining enumerations of error not addressed by the Court of Appeals because of that court's reversal . . . and find them to be without merit." 283 S.E.2d at 266. The issue of the appropriate rate of post-judgment interest, however, was not before the Georgia Supreme Court, *see* Application for Certiorari at 1–2, 4, *Cornell v. Camellia Corp.,* and we construe the Georgia Supreme Court's concluding remark to refer only to the other issues raised by the defendant-appellant that were not addressed by the Georgia Court of Appeals.

well as for new judgments entered after July 1, 1980. Since the statute literally extends to "*all* judgments in this state" and there are strong policy reasons for applying the same, increased rate of interest for all judgments outstanding as of July 1, 1980, we forecast that if the Georgia Supreme Court were to decide this issue, that court would hold that Shook & Fletcher is entitled to post-judgment interest at a rate of 12% commencing on July 1, 1980.

Central Rigging argues and the district court held that awarding Shook & Fletcher a 12% post-judgment rate of interest for the portion of the judgment not satisfied by July 1, 1980, would be a retroactive application of § 57–108 and that such a retroactive application of the statute is not permissible under Georgia law. We disagree with the characterization of this interpretation of § 57–108 as "retroactive." Under our view of the statute, judgments entered before July 1, 1980, continued to earn interest until that time at the old rate of 7%. Any judgment-debtor who wished to avoid paying 12% interest could simply have paid the judgment by the effective date of the statute. All litigants in the state had constructive notice of the increase in the interest rate. Ga.Code Ann. § 102–105 (1968). A retroactive law is defined by the Georgia courts as:

"A statute is retroactive, in its legal sense, which creates a new obligation on transactions or considerations already past, or destroys or impairs vested rights. A statute does not operate retrospectively because it relates to antecedent facts, but if it is intended to affect transactions which occurred or rights which accrued before it became operative as such, and which ascribe to them essentially different effects, in view of the law at the time of their occurrence, it is retroactive in character."

*Williams Brothers Lumber v. Anderson*, 210 Ga. 198, 78 S.E.2d 612, 617 (1953) (quoting *Ross v. Lettice*, 134 Ga. 866, 68 S.E. 734, 735). Central Rigging has no vested right to a continued 7% rate of interest on judgments entered against it; this rate of interest is a creature of statute, not contract. The statute imposed an obligation to pay 7% annual interest for every day the judgment remained unsatisfied until July 1, 1980. On that date, a new statutory obligation to pay 12% interest was created to apply henceforth for every day that the judgment remained unpaid. Central Rigging's obligation to pay interest at an annual rate of 12% for the day of July 1, 1980, for example, was not incurred as of the date of judgment by virtue of the judgment, but rather as of July 1, 1980, by virtue of not having paid the judgment by that date. We therefore conclude that our construction of the statute would not be a retroactive application of § 57–108, and that Shook & Fletcher is entitled as a matter of Georgia law to this increased rate of post-judgment interest.[8]

## III.  CONCLUSION

In summary, we find that the claims raised by Central Rigging in its appeal are without merit and we therefore affirm the district court in this respect. With respect to the cross-appeal of Shook & Fletcher, we

---

**8.** Although at first blush *The Mayor and Council of Macon v. Trustees of Bibb County Academy*, 7 Ga. 204 (1849), a case not cited by the parties or the district court, might appear to dictate a contrary result, careful examination of that case reveals that it is distinguishable from the present case. In the *Bibb County Academy* case, the Georgia Supreme Court held that an 1845 Act reducing the rate of interest on judgments from 8 to 7% would not apply at all to a judgment that was entered prior to the enactment of the 1845 law. *Id.* at 206. The court concluded that the Act "was prospective in its operation, and did not embrace any debt due prior to its enactment, either by contract, or as a debt of record." *Id.* (emphasis in original). This result, however, was compelled by the language of the 1845 statute that expressly applied only to "contracts ... *made after the passage of this Act* ..." and "any judgment *hereafter rendered* in any court of this state ...." 1845 Ga.Laws 35–36 (emphasis added). The present version of Georgia Code § 57–108 contains no such language limiting the statute's application to judgments rendered after its promulgation.

conclude that the district court erred in denying Shook & Fletcher prejudgment interest and in refusing to apply Georgia's amended rate of post-judgment interest after the effective date of that amendment.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.