Charles H. PETERSON

v.

CROWN FINANCIAL CORPORATION.

Civ. A. No. 77–3115.

United States District Court,
E.D. Pennsylvania.

Nov. 16, 1982.
As Amended Dec. 7, 1982.

C.L. Robinson, Omaha, Neb., Michael M. Baylson, Philadelphia, Pa., for plaintiff.

Stephen A. Cozen, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Disposition of this motion for prejudgment interest will hopefully mark the final chapter in the long and unhappy relationship between Charles Peterson, a Nebraska farmer, and Crown Financial Corporation ("Crown"), a Pennsylvania corporation engaged in the business of financing installment sales. The relationship, chronicled more fully in prior opinions of this court

and the Court of Appeals,[1] began in December of 1969, when the parties entered into the first of what would become a series of five loan agreements. For each of these agreements, Peterson executed a promissory note, with interest on each note calculated at 2½ percent above the prime rate.

A flurry of complicated transactions surrounded the issuance of the fourth and fifth such notes in late December of 1972. When the papers settled, Peterson had paid $499,658.85 of interest due on the fourth note, and the note was returned to him marked "cancelled." Peterson apparently understood that the $368,875.62 in interest remaining due on that fourth note had been forgiven. He learned that Crown assumed otherwise in December of 1975, when notified by Crown that he was in default in that amount. Crown refused to release Peterson's shares of stock that it held as collateral until Peterson paid the disputed sum in full. Peterson paid the money on December 29, 1975, but did so "under duress, involuntarily, and under protest." This lawsuit, seeking a return of the money, followed. 476 F.Supp. 1155, 1156–57; 661 F.2d 287, 288–89.

In an opinion and order dated July 20, 1979, I determined that, as a matter of law, the intentional cancellation of the fourth note forgave the interest that remained outstanding.[2] Accordingly, summary judgment for the plaintiff was granted. 476 F.Supp. at 1161. In a later ruling, I determined that Peterson was entitled to prejudgment interest from the date the disputed payment was made until the date summary judgment was granted. I also ruled that, despite plaintiff's cogent arguments that prejudgment interest should be awarded at money-market rates, as a federal judge sitting in diversity, I was constrained by Pennsylvania common and statutory law to limit the rate of prejudgment interest to six percent. 498 F.Supp. at 1179–80.

Both parties appealed aspects of my rulings. The Court of Appeals for the Third Circuit affirmed the determination that the $368,875.62 was forgiven by Crown's cancellation of Peterson's note, and that the money was therefore wrongfully held by Crown. The Court disagreed, however, with my view that I could not authorize prejudgment interest at a rate in excess of six percent. Speaking through Judge Adams, the Court of Appeals characterized the case as sounding in restitution rather than contract, and held that under Pennsylvania precedents, "the district court has discretion to award damages in the nature of prejudgment interest in an amount greater than six percent." 661 F.2d at 290. It remanded the case "for reconsideration of the prejudgment interest award." Id.

To carry out the mandate of the Court of Appeals, three issues need to be resolved. First, what is the equitable rate of prejudgment interest? Second, what is the date of judgment, signifying the end of prejudgment interest and the beginning of postjudgment interest, limited by law to six percent? Finally, should the prejudgment interest award be computed simply or on a compound basis?[3]

## I.

The question of an equitable rate of interest was the subject of a discussion in one of my earlier opinions which bears repeating here:

What remains to be determined is the rate at which the interest due is to be computed. Plaintiff argues for "money-market rates." During the period in

1. 476 F.Supp. 1155 (E.D.Pa.1979), 498 F.Supp. 1177 (E.D.Pa.1980), and 661 F.2d 287 (3rd Cir. 1981). The events leading up to litigation will be re-told here summarily, and only as they relate to the instant motion.

2. The ruling was predicated on section 3–605 of the Uniform Commercial Code, now found in 13 Pa.Cons.Stat.Ann. § 3605 (Purdon 1980).

3. Plaintiff also renews his claim for attorney's fees. But I find no basis for reaching a conclusion different from the one I previously arrived at: "I cannot conclude that Crown has litigated this case vexatiously or in bad faith, and there would appear to be no other basis upon which I might allow plaintiff an award of attorney's fees." 498 F.Supp. at 1178 n. 1. Accordingly, plaintiff's renewed claim will be denied.

which Crown has wrongfully retained his money, plaintiff has been forced to borrow, paying interest ranging from 8.5% to 12.25%. And while plaintiff has had to borrow, Crown has had the use of the money to make further loans at rates presumably in the neighborhood of the 2½ points above prime which Crown charged plaintiff for the loan which is the root of this litigation. Plaintiff also emphasizes that from January of 1976 to the present—the period during which he has been deprived of his money—the purchasing power of the dollar has decreased more than 29%. Unless a rate of interest is assessed which is steep enough to force Crown to disgorge any profit it has made by the use of plaintiff's money, and to compensate plaintiff for the costs he encountered as a result of Crown's action, Crown will have profited from its wrongful act and plaintiff will remain, despite a judgment on the merits, a substantial loser in the controversy.

There is considerable logic in plaintiff's contention that 2½ points above prime would be a singularly equitable measure of prejudgment interest in this case.

498 F.Supp. at 1179.

I refrained from awarding interest in that amount solely because of my view that plaintiff's contention "appears to be without support in the Pennsylvania cases." *Id.* Now that the Court of Appeals has ruled that Pennsylvania law does give me discretion to set prejudgment interest at an equitable rate, I see no reason to depart from my original calculation of the fair rate of interest.

Defendant has urged this court to receive testimony concerning the entire loan transaction between Peterson and Crown before setting the rate of prejudgment interest, on the theory that "[a]ny exercise of discretion must be bottomed on an understanding of the total relationship between the parties

here." Defendant's Brief at 17; Defendant's Reply Brief at 7. Crown contends that, by looking at the transactions as a whole, I would learn that Peterson's financial irresponsibility caused Crown to realize an unreasonably small profit from the Peterson loans. That fact, in Crown's view, should lead me to award interest at lower than money-market rates.

I decline Crown's invitation to explore in detail the events surrounding the various loans, on the simple ground that they are not material to the issue before me. On May 12, 1980, the parties entered into a stipulation that essentially limited the issue before the court to whether Crown wrongfully retained the money Peterson paid to Crown under protest. I ruled that it had, and the Court of Appeals has affirmed that determination. The disputed sum represented interest paid to Crown on Peterson's loan that accumulated at the rate of 2½ percent over prime. Crown has had the opportunity to use this money to make further loans at roughly the same rate of interest. Requiring repayment of an equivalent sum will put the parties in the approximate financial positions they would have been in if the money had not been wrongfully retained. And adoption of a rule requiring repayment of money at its true worth will help reduce the "built-in incentive to withhold sums due, and indeed, to prolong litigation." 498 F.Supp. at 1180 n. 5. Accordingly, plaintiff will be awarded prejudgment interest measured at 2½ percent above the prime rate of interest.

## II.

The parties also divide over what should be considered the date of judgment in this case. That date is significant because it marks the boundary between prejudgment interest, calculated at 2½ percent over prime, and postjudgment interest, limited by statute to six percent.[4] Defendant

---

4. Before being recently amended, 28 U.S.C. § 1961 directed that postjudgment interest on federal judgments be calculated at the state rate. The postjudgment rate in Pennsylvania is calculated at the legal rate, 42 Pa.Cons.Stat.

Ann. § 8101, which is six percent. 41 Pa.Stat. Ann. §§ 201, 202.

The amendment to 28 U.S.C. § 1961 directs that interest be calculated "at a rate equal to the coupon issue yield equivalent (as deter-

maintains that the date of judgment is July 20, 1979, when I entered summary judgment in plaintiff's favor for the $368,875.62 defendant had held on to. Plaintiff, by contrast, urges the court to adopt the day of this memorandum and order as the date of judgment.

The content of the order of September 29, 1980 is helpful in resolving this controversy. In that order, I entered final judgment for the plaintiff

> in the amount of $441,037.19 (representing the amount in dispute of $363,875.62, plus pre-judgment interest at 6% from January 7, 1976 to July 20, 1979 of $77,161.57), plus post-judgment interest from July 20, 1979).

Peterson argues that this order, marking July 20, 1979 as the date of judgment, was rendered a nullity by the Court of Appeals. He contends that the Court of Appeals vacated my entry of a damage award, and remanded for a new trial on the issue of damages. Plaintiff relies on *Rea v. Ford Motor Co.,* 406 F.Supp. 271 (W.D.Pa.1975), *vacated in part,* 560 F.2d 554 (3rd Cir.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977), for the proposition that, in such a situation, a court should measure damages up to the time the new award is made. He then seeks to clinch the syllogism by arguing that because the damages for delay continue to the present, the higher rate of disgorgement should apply up to the date of this memorandum and order.

 The flaw in the syllogism is that it fundamentally misconstrues the nature of the Court of Appeals decision in this case. The Court did not vacate the underlying damage award of $363,875.62; it affirmed it. Rule 37 of the Federal Rules of Appellate Procedure provides, in relevant part: "if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the district court." The date of judgment in a restitution case turns on when "the amount to be restored becomes relatively certain." *Bebchick v. Washington Metro. Transit Comm'n,* 645 F.2d 1086 (D.C.Cir.1981). That date was the date of summary judgment. "[R]edetermination ... of the damages for delay, which may be set at a rate greater than Pennsylvania's legal rate of interest," 661 F.2d at 298, referred only to my discretion to set prejudgment interest higher than the legal rate.[5]

### III.

 Finally, Peterson requests that his prejudgment award be computed on a compound basis. Although I do have discretion to award compound interest in a restitution case,[6] I do not find it appropriate to do so here.

mined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury Bills settled immediately prior to the date of judgment." 28 U.S.C. § 1961, *as amended by* Act of April 2, 1982, Pub.L. 97–164, Title III, § 302(a), 96 Stat. 55. The amendment became effective October 1, 1982, *id.* at § 402, and there is no indication that it was meant to have retroactive effect. The date judgment was entered in this case—July 20, 1979—not only long antedates the effective date of the amendment of § 1961, it antedates the enactment of the amendment by more than two-and-a-half years. Accordingly, post-judgment interest is calculated at the state rate, as was mandated by § 1961 as it stood on the date of the entry of judgment.

5. In most disputes concerning the date of judgment, it is the prevailing party that argues for an earlier date in order to take advantage of postjudgment interest. But because in this in-

stance, pursuant to the Court of Appeals' ruling, prejudgment interest is able to reflect the current value of money while postjudgment interest is stuck at the legal rate, the parties here have nimbly switched their historic positions, the prevailing party arguing to limit its postjudgment interest claims in order to extend the period of prejudgment interest.

6. In equity, "the decision whether to award interest and the amount of such interest, is vested in the discretion of the chancellor." *Sack v. Feinman,* 489 Pa. 152, 413 A.2d 1059, 1065–66 (1980). The *Sack* case cited with approval a passage from D. Dobbs, Remedies 170 (1973), which discusses when an award of compound interest is proper:

> [T]he principle in such cases is the prevention of unjust enrichment. If the fiduciary makes profits, or gets interest on the money he wrongly takes from the beneficiary, he must be held liable not only for the profits or

Plaintiff contends that only compound interest would fully compensate him for his loss, because the loans he took out in order to replace the sum Crown retained required interest to be paid currently. And he argues that defendant had Peterson's money to make loans with interest paid on a compound basis. Defendant, of course, denies that it was able to obtain compound interest from the loans it made with this money.

Tracing the actual disposition of this particular sum of money is an impossible task. What evidence is available, however, is not inconsistent with defendant's version. That evidence is the Peterson loans. Four of the five loans provided for interest to be paid at maturity; that is, on a simple, not compound, basis. 476 F.Supp. 1156–57. I conclude that simple interest should suffice to restore the equitable balance.

## ORDER

For the reasons recited in the accompanying memorandum, it, is hereby ORDERED that defendant will pay plaintiff $363,-875.62, representing the amount in dispute, and also pay prejudgment interest calculated from January 7, 1976 to July 20, 1979 at a rate of 2½% over the prime rate of interest charged by the First Pennsylvania Bank during that time, averaged on a monthly basis (parties to submit amount within ten (10) days of this order), plus postjudgment interest from July 20, 1979.

interest he makes on such funds, but also for interest on those profits or the interest itself. In no other way can his enrichment be taken from him. Hence any claim based upon unjust enrichment or restitution, rather than upon compensation or damages, not only permits pre-judgment interest, but also permits an award of compound interest. 413 A.2d at 1065.