LITTON SYSTEMS, INC., et al., Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.

No. 76 Civ. 2512 (WCC).

United States District Court, S.D. New York.

July 28, 1983.

---

Curtis, Mallet-Prevost, Colt & Mosle, New York City, Howrey & Simon, Washington, D.C., for plaintiffs; Peter E. Fleming, Jr., New York City, William Simon, P.C., John Bodner, Jr., P.C., Washington, D.C., of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants; Howard J. Trienens, Raymond Brenner, David J. Ritchie, Leonard Joseph, Harvey Kurzweil, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

On June 30, 1981, following a five-month jury trial involving complicated issues of

antitrust liability, this Court entered judgment in favor of plaintiffs ("Litton") against defendants ("AT & T") in the amount of $276,774,729. That judgment, as amended on July 20, 1981, was unanimously affirmed by the Court of Appeals for the Second Circuit on February 3, 1983. *Litton Systems, Inc. v. American Tel. & Tel. Co.,* 700 F.2d 785 (2d Cir.1983), *reh. denied,* March 30, 1983. AT & T then filed in the Supreme Court a petition for writ of certiorari, which is currently pending.

The case is presently before the Court on AT & T's motion to enforce this Court's Order, dated November 20, 1981, staying execution of the judgment pending further judicial review. Litton has cross-moved to have the Court amend the judgment to reflect the new post-judgment interest rate provided for in the Federal Courts Improvement Act of 1982, 28 U.S.C. § 1961(a). For the reasons stated below, AT & T's motion is granted and Litton's motion is denied.

## A. *Stay of Execution*

In anticipation of an inevitable period of appellate review of the $276 million dollar award, the parties on November 19, 1981 entered into a stipulation to stay execution of the judgment and to waive the filing of a supersedeas bond. The Court embodied the parties' stipulation in its November 20, 1981 Order, which provided, *inter alia,* that:

> Any execution of the amended judgment entered by this Court on July 20, 1981 ... [is] hereby stayed during the period within which a Notice of Appeal may be filed from that judgment and, upon the filing of a Notice of Appeal, for a period of ninety-one (91) days after entry of an order by the Second Circuit affirming or modifying the judgment, or dismissing the appeal, or if a petition for review to the Supreme Court is filed by defendants, until ten (10) days after entry of any dispositive order in plaintiff's favor by the Supreme Court.

Concerned that Litton was about to take steps to execute the judgment as soon as 91 days had elapsed from the date of the Second Circuit's original decision affirming the judgment, AT & T on May 3, 1983 filed its motion to enforce this Court's prior stay order. On May 4, 1983, the parties appeared before the Court to state their contentions as to whether Litton was free under the November 20, 1981 stay order to execute the judgment after the 91-day period had run, but before AT & T's time to file a petition for a writ of certiorari had expired. This difference in the two time periods resulted because the 91-day period incorporated in the stay commenced as of February 3, the date of the Second Circuit's decision to affirm the judgment, while the 90-day period provided in 28 U.S.C. § 2101(c) for filing a petition for a writ of certiorari ran from March 30, the date on which the Court denied AT & T's motion for a rehearing. On the basis of the parties' presentations at the conference, the Court entered an Interim Order continuing the prior stay but granted Litton leave to file formal papers in opposition to AT & T's motion. Between the time of that conference and the date of this Opinion, AT & T has filed its petition in the Supreme Court.

After considering the parties' additional submissions, the Court is persuaded that its Interim Order was providently entered and that Litton should be stayed from execution of the judgment until ten days after entry of a dispositive order by the Supreme Court. As an initial matter, I reject Litton's argument that the Second Circuit's refusal to stay its mandate for 90 days, as requested by AT & T in a motion under Rule 41(b), F.R.App.P., conclusively determines the issue before this Court. Rather, as I noted during the May 4 conference, the Second Circuit's decision to deny AT & T's motion without opinion should be construed only as a procedural ruling on the need for an extension of the time provided under Rule 41(b) and not as an adjudication as to the effect of this Court's order of November 20, 1981. Thus, the construction of the stay order is left for this Court to determine.

■ Litton argues that under the plain language of the November 20 stay, it was

free to execute the judgment 91 days after the Court of Appeals' February 3 decision, unless AT & T filed a petition for a writ of certiorari before the 91-day period had elapsed. Plaintiffs contend further that under any other reading of the language of the Order, the 91-day limitation would be rendered ineffective.

The stay's terms, however, are not as crystalline as Litton assumes. While the Court recognizes that by use of the 91-day figure the parties, as well as the Court, must have contemplated that the 90-day periods for petitioning the Supreme Court pursuant to 28 U.S.C. § 2101(c) and for abstention from execution of the judgment following the Second Circuit's ruling would expire simultaneously, that desired symmetry was upset by the filing of a petition for a rehearing. This created an ambiguity in the conditions of the stay which failed to provide expressly for this contingency. It is far from clear that the terms of that Order should be interpreted, as Litton insists, effectively to require AT & T to file its petition in the Supreme Court within 90 days, even though it is statutorily entitled to additional time.

Litton's sharply focused interpretation ignores the alternative provision contained in the Order, which allows for a continuance of the stay until 10 days after a disposition by the Supreme Court and is not subject to the 90-day limitation. Thus, to further the stay's obvious goal of permitting full judicial review of this case prior to execution of the massive judgment, it seems sensible to give effect to that alternative provision, rather than the 90-day limitation. The stay should thus remain effective until the expiration of AT & T's time for filing a petition for a writ of certiorari. Since AT & T did, in fact, timely file a petition on June 29, 1983, Litton will be stayed from execution of the amended judgment until 10 days after entry of any dispositive order in plaintiffs' favor by the Supreme Court.

### B. *Amendment of the Judgment*

Regardless of the stay, Litton has moved the Court to amend the judgment to allow for interest at a rate calculated pursuant to the new procedure provided by the Federal Courts Improvement Act of 1982. Prior to 1982, 28 U.S.C. § 1961 provided that post-judgment interest on a civil judgment of a federal district court would be computed at the rate established by State law. In April 1982, § 1961 was rewritten to provide that, effective October 1, 1982, interest on federal court judgments would be computed at the "coupon issue yield equivalent ... of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment." 28 U.S.C. § 1961(a).[1] According to Litton, as of June 19, 1981, the date of the last auction immediately prior to the entry of judgment in this action, the interest on 52-week Treasury bills was 13.146%, which is much more favorable to Litton than the nine per-cent rate currently allowed under New York law.

Unfortunately, in drafting the amended version of § 1961, Congress failed to indicate explicitly whether it was to be applied to outstanding judgments entered prior to its effective date. Relying on the Supreme Court's decision in *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), Litton contends that the change to § 1961 should be applied retroactively, and thus that the 13.146% rate should govern the accrual of interest from June 30, 1981, the date judgment was originally entered. Alternatively, plaintiff asserts that even if the amendment to § 1961 does not have such extreme retroactive effect, it should still be applied to the instant judgment as of October 1, 1982, the date the Federal Courts Improvement Act became effective. Conversely, AT & T argues that the recently modified procedure for calculating post-judgment interest should not be applied to

---

1. The amended section also provides that interest will be compounded annually, see 28 U.S.C. § 1961(b), in contrast to State law which allows only simple interest.

any judgment entered prior to October 1, 1982.[2]

■ The Court agrees with AT & T that the interest rate to be applied to judgments entered prior to October 1, 1982 should not be calculated pursuant to the procedure introduced by the 1982 amendment to § 1961. Contrary to Litton's contentions, retroactive application of the revision is not mandated by the Supreme Court's decision in *Bradley, supra.* In *Bradley,* the issue before the Court was the propriety of a district court's award of attorney's fees to prevailing litigants in a school desegregation case. At the time the lower court granted the fees, there existed no statutory basis for such an award. While the case was on appeal, however, Congress enacted § 718 of Title VII of the Emergency School Aid Act, 20 U.S.C. § 1617, which grants authority to a federal court to award reasonable attorney's fees when appropriate in a school desegregation case.

■ After reciting the well-established rule that " 'an appellate court must apply

the law in effect at the time it renders its decision,' " 416 U.S. at 714, 94 S.Ct. at 2017, *quoting Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 281, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969), the Court held that § 718 should be applied in *Bradley* to allow the district court in its discretion to award attorney's fees for services rendered prior to the effective date of the section. See 416 U.S. at 724, 94 S.Ct. at 2022. More generally, the Court, clarifying its decision in *Thorpe,*[3] ruled that even where an intervening law does not contain an explicit provision that it should be applied to pending cases, "it is to be given recognition and effect." *Id.* at 715, 94 S.Ct. at 2018. "Recognition and effect" does not, however, require a court to apply an intervening law to a pending case in all situations. For instance, where Congress has expressly provided or the legislative history indicates that the statute should be given only prospective effect, or where the operation of the intervening law in the pending case would cause manifest injustice, the new statute will not be given retroactive

---

**2.** The Court rejects AT & T's procedural argument that Litton's motion is time-barred by Rule 59(e), F.R.Civ.P., which requires that a motion to alter or amend a judgment be made within ten days of entry, or by Rule 60(b)(1), which sets a one-year time limit on any motion for relief from the operation of a judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect." Although the amended judgment entered by this Court on July 20, 1981 recites that interest will be paid on the outstanding amount at the rate of nine percent, the rate provided at the time by New York law which was made applicable by 28 U.S.C. § 1961, it should be emphasized that post-judgment interest is a creature of statute, not of contract or judicial determination. See, *e.g., Shook & Fletcher Insulation Co. v. Central Lighting & Contracting Corp.,* 684 F.2d 1383, 1389 (11th Cir.1982). The inclusion in the amended judgment entered by this Court on July 20, 1981 of a provision for post-judgment interest is thus nothing more than an obvious statement of the applicable statutory rate, which would have been earned whether or not recited in the judgment. *Cf., Akermanis v. Sea-Land, Inc.,* 521 F.Supp. 44, 57 (S.D.N.Y. 1981) (§ 1961 does "not permit the exercise of judicial discretion in its application"), *rev'd on other grounds,* 688 F.2d 898 (2d Cir.1982). To sustain AT & T's procedural argument would, as plaintiff aptly notes, result in the absurd and

inequitable consequence of denying Litton a mechanism for invoking its asserted statutory right to collect a revised rate of interest on the judgment, a judgment which remains outstanding only because of AT & T's decision to pursue various avenues of appellate review. The Court has ample power to consider Litton's motion under Rule 60(b)(6), F.R.Civ.P., which allows the Court to relieve a party from the operation of a judgment for any reason justifying relief, so long as the motion is made within a reasonable time. If Litton is indeed correct that the new Congressional enactment entitles it to a 13.146% rate of interest, that entitlement certainly constitutes a reason justifying relief from the nine-percent rate set forth in the amended judgment. Moreover, the Court views Litton's motion as timely in view of the October 1, 1982 effective date of the Federal Courts Improvement Act and in light of the fact that this Court was without jurisdiction over this matter while the judgment was on appeal to the Second Circuit.

**3.** In *Thorpe,* the Supreme Court ruled that where new eviction procedures were established by the Department of Housing and Urban Development while a tenant's action challenging an eviction notice was on appeal, those procedures had to be applied before the tenant could be evicted. 393 U.S. at 283, 89 S.Ct. at 526.

application. See *id.* at 715–16 n. 21, 716, 94 S.Ct. at 2018 n. 21, 2019.

AT & T argues that the *Bradley* rule applies only to changes in the law that are relevant to issues specifically on appeal at the time the new law is enacted. Under this narrow construction, the instant case is not "pending" for purposes of applying the amendment to § 1961 because the applicable interest rate was settled at the time judgment was entered and it has not been contested during the subsequent appeal of the amended judgment. Despite the superficial appeal of this argument, the courts have unanimously rejected such a restrictive interpretation.

For example, in *Fox v. Parker,* 626 F.2d 351 (4th Cir.1980), a judgment against a Virginia state trooper awarding the plaintiff five dollars in damages for the trooper's use of excessive force in arresting the plaintiff was on appeal to the Court of Appeals for the Fourth Circuit when 42 U.S.C. § 1988 was amended to allow for an award of attorney's fees to prevailing litigants in actions under 42 U.S.C. § 1983. The plaintiff subsequently dismissed his appeal and then, ten months later, moved in the district court for an award of attorney's fees under § 1988. In upholding the district court's application of § 1988 to the plaintiff's request, the Fourth Circuit stated:

> This court has held that the Act applies to section 1983 cases which were pending on appeal when the Act became effective.... Fox's appeal was pending on that date and therefore comes within the purview of the Act.... We find no legal or logical basis for requiring that the issue of attorney fees must be pending on the effective date of the Act. Such an interpretation would run contrary to the authorities cited above and the intent of Congress.

626 F.2d at 354 (citations omitted).

*Accord, Northcross v. Board of Education of Memphis,* 611 F.2d 624, 633–34 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). These same principles surely apply to Litton's request for a higher rate of post-judgment interest in the instant case.

But even employing a *Bradley* analysis, the Court is persuaded that the rate of interest payable on the amended judgment should not be governed by the 1982 change in § 1961. Notwithstanding the complete absence of any legislative history even vaguely relevant to the question whether Congress intended the 1982 amendment of § 1961 to apply to judgments previously entered but on appeal, there are some indirect indicia that such an effect was not contemplated. From the scant legislative history that does exist, it is clear that one of the purposes of abandoning the method by which post-judgment interest was determined on the basis of state rates was to create a uniform procedure for calculating interest on judgments in all federal courts. See S.Rep. No. 97–275, *reprinted in,* 1982 U.S.Code Cong. & Ad.News 11, 40. It is equally clear that the decision to tie the post-judgment interest rate into a market indicator, such as the variable Treasury Bill yield, was an attempt to reduce the economic incentive for a losing party to appeal a judgment solely because he would be able to retain control of the funds and take advantage during the pendency of the appeal of the substantial disparity between the commercial rate of interest and post-judgment rates provided under the laws of most states. See *id.*

The words of § 1961 provide that interest "shall be calculated from the date of the entry of the judgment" at the Treasury Bill rate determined by the auction "Immediately prior to the date of the judgment." Thus, the Treasury Bill yield in existence on the date of the judgment will govern the rate of interest to be paid during the entire period until the judgment is satisfied. Congress debated and passed the amendment to § 1961 during the early spring of 1982, shortly after this country had experienced a brief period of the highest interest rates in its history. At the time of the debates, however, interest rates had passed their peak and were rapidly declining toward historically more normal levels. For example, according to a chart provided by Litton, the

prime rate charged by banks to their largest, soundest borrowers reached a record high of 20.5% in August of 1981. By April of 1982, however, when the Federal Courts Improvement Act was enacted, that rate had declined to 16.5%, and by October 1982, when the Act became effective, the rate had dropped all the way to 12.5161%. Conversely, in June of 1981, when judgment in this case was originally entered, the prime rate stood at 20.033%, just slightly below its all-time high.[4]

 Based upon the clear trend of declining interest rates which was well under way at the time Congress amended § 1961, and of which Congress must surely have been aware, the Court could hardly be justified in presuming that in the absence of any explicit direction to the contrary, Congress intended the new procedure to apply retroactively. In effect, retroactive application of § 1961 as amended would allow prior judgments fortuitously entered during this brief period of anomalously high interest rates to earn those rates despite a drastic market decline before the effective date of the Act. Nor does *Bradley* require that the Court construe the silence of Congress as mandating this bizarre result. On the issue of Congressional intent, *Bradley* merely holds that in the absence of explicit legislative direction or relevant legislative history, a court need not presume that a statute should be applied only prospectively. See 416 U.S. at 715, 94 S.Ct. at 2018. But this is hardly the same as saying that in the absence of such direction a court must presume that the statute applies retroactively. Indeed, the Court clearly stated that neither *Bradley* nor *Thorpe* "purports to hold that courts must always thus apply new laws to pending cases in the absence of clear legislative direction to the contrary." *Id.* (footnote omitted). Accordingly, the amended provision's requirement that the post-judgment interest rate be established as of the date judgment is entered, when coupled with the timing of the enactment

of this new procedure, persuades the Court that the amendment should not be applied retroactively to this judgment.

These same arguments apply with equal force to Litton's alternative contention that the new interest provision should be applied to the instant judgment as of October 1, 1982. As plaintiff has noted, what the statute provides is that the post-judgment interest rate is determined by the Treasury Bill yield immediately prior to the entry of judgment. If this provision were applied in the instant case, the rate would be 13.146%. If the judgment had been entered on October 1, 1982, the date the amendment became effective, the applicable post-judgment interest rate would have been only 10.4%. It would be illogical to begin in October 1982 to apply an interest rate determined by credit market conditions existing more than 15 months earlier, which rate bears no relationship to, and indeed grossly exceeds, market interest rates prevailing at the time the rate became effective.

The argument in support of applying the 13.146% rate beginning on October 1, 1982 is, furthermore, simply not analogous to the theory underlying application to an outstanding judgment of a change in the state interest rate commencing on the date the change becomes effective. The purpose for either raising or lowering the rate of interest payable on an outstanding judgment is to reflect a change in the prevailing market rates and thereby eliminate inequities resulting from a delay in collection of the judgment. See *Shook & Fletcher Insulation Co. v. Central Rigging & Contracting Corp.*, 684 F.2d 1383, 1388 (11th Cir.1982). By amending a statute which provides for a fixed rate of interest to allow for a different fixed rate, the legislature directly accomplishes this goal, presumably by substituting a rate that bears some relationship to the change in market conditions. If such a change is applied to an outstanding judgment, the judgment holder is compensated

---

4. As Litton notes, the interest rate which would have been applied had the new procedure been effective on June 30, 1981 was 13.146%. By October 1, 1982, when the procedure did be-

come effective, the applicable rate was only 10.4%. For a judgment entered today, the applicable interest rate is 10.25%.

for the delay in collecting his judgment in a more equitable manner which at least roughly approaches the accuracy that would result if post-judgment interest statutes provided for floating rates based on prevailing market conditions.

Litton, however, is not arguing for a change in the rate but for a change in the process by which the rate is established. It is only indirectly, through application of that different method of calculation, that Litton contends a higher rate should attach in this case. But the process Litton seeks to utilize is, in this case, keyed into conditions as they existed in June 1981. The 13.146% rate computed under the procedure advocated by Litton in no way reflects conditions in existence on October 1, 1982. Consequently the state rate change cases cited by Litton, *e.g., Morley v. Lake Shore & M.S.R. Co.,* 146 U.S. 162, 13 S.Ct. 54, 36 L.Ed. 925 (1892); *Shook & Fletcher, supra,* 684 F.2d 1383, are inapposite.[5]

The Court's conclusion that the amended version of § 1961 should not be applied to judgments entered prior to October 1, 1982 garners additional support from the views of the Administrative Office of the United States Courts and from the conclusions of the two district courts that have considered the question. In a July 27 memorandum to all federal Judges, Magistrates, Court Executives and Court Clerks, the Administrative Office expressed its opinion that the amended procedure applies only to judgments entered on or after October 1, 1982. Although the views of the Administrative Office are not entitled to the deference normally given to those of an administrative agency interpreting either its own regulations or a statute which it is charged

with administering, its opinion is, nevertheless, that of a government body that has considered the issue and reached a conclusion consistent with this Court's result.

Moreover, both of the reported decisions dealing with the application of the amendment to § 1961 to an outstanding judgment in a pending case have reached the same result. See *United States for use of Billows Elect. Co. Supply Co., Inc. v. E.J.T. Const. Co., Inc.,* 557 F.Supp. 514, 516 (E.D. Pa.1983); *Peterson v. Crown Financial Corp.,* 553 F.Supp. 114, 116 n. 4 (E.D.Pa. 1982).[6] Although this Court does not endorse all the reasoning contained in those opinions, notably the rationale of the *Peterson* court, see 553 F.Supp. at 116 n. 4, it does concur in their result.

### C. Conclusion

For the reasons stated above, AT & T's motion to stay the execution of the judgment is granted. Litton's motion to amend the judgment to provide for post-judgment interest at a 13.146% rate in accordance with the 1982 amendment to 28 U.S.C. § 1961 is denied.

SO ORDERED.

---

5. The difficulty with this position, advocating a change as of October 1, 1982, is further illustrated by hypothesizing what would have happened had interest rates risen, rather than fallen, between June of 1981 and October of 1982. In that case, the rate calculated pursuant to the new procedure set forth in § 1961 would be lower than if the rate had been based on October 1982 conditions. Assuming that New York State had raised its statutory rate to reflect the increase in market rates, it is quite possible that the rate available under State law would be higher than the rate allowable in that partic-

ular instance under the amended § 1961 calculation. In such a situation, the Court is confident that Litton would not be advancing its present arguments, although AT & T might be.

6. The two other cases cited by AT & T, *Burke v. Guiney,* 700 F.2d 767 (1st Cir.1983) and *Preston v. Thompson,* 565 F.Supp. 310 (E.D.Ill. 1983), although applying the old version of § 1961 to outstanding judgments in pending cases after the effective date of the amendment, did not expressly consider the issue.